## THE GEORGIA SOUTHERN RAILROAD COMPANY *vs.* BIGELOW.

1. Where the receivers of a foreign railroad operated a connecting railroad in this state as part of a through line, under a contract by which they were to operate the Georgia branch under the laws of Georgia, furnish their own rolling stock, for which the Georgia road should pay a certain amount, that each road should contribute its proportion of the expenses, and the net proceeds should be divided *pro rata*, a depot agent on the line of the Georgia corporation was such an agent of that company as could be served with process against it, though he might have been employed by the receivers and made remittances to them, by whom the proceeds were afterwards distributed under the contract.

(*a.*) Especially was such service good when re-enforced by service on the sole resident director of the Georgia corporation.

2. A railroad ticket issued during the day of December 6th, and limited to be used within two days from the date sold, did not expire until 12 o'clock on the night of December 8th.

3. The verdict in this case is not so excessively large as to justify the inference of gross mistake or undue bias.

Railroads. Principal and Agent. Contracts. Damages. Verdict. Before Judge UNDERWOOD. Floyd Superior Court. September Term, 1880.

Reported in the decision.

D. S. PRINTUP, for plaintiff in error.

C. ROWELL; JOEL BRANHAM, for defendant.

SPEER, Justice.

Thomas A. Walker and John Tucker, receivers of that portion of the Selma, Rome and Dalton Railroad lying in Alabama, appointed by the chancellor of the middle chancery division of Alabama, applied to the chancellor for leave to lease that portion of the road lying in Georgia which had been sold under a decree to Edward D. Cow-

v 68—16

man.   After various applications, modifying orders, etc., upon the report made by a register appointed for that purpose by the chancellor, and by his consent and approval, on the 29th of April, 1876, the receivers and Cowman entered into an agreement, by which " the receivers of the Selma, Rome and Dalton Railroad were to operate the whole line on their own account, and for the other contracting party for one month, and from month to month until dissolved."   The said agreement provided that the receivers should operate the Georgia end in connection with the Alabama portion of the road, as required by the laws of Georgia, run trains over it as receivers, subject to the following conditions and stipulations: " This was to be done at the expense of the Georgia Southern, and in no event is the Selma, Rome and Dalton Railroad in Alabama, or any of the assets in the hands of the receivers, to become liable in any manner for the operation of said road.   The Georgia Southern was to bear its proportion of operating expenses of the whole line (28 4-7 per cent), and pay $1,000.00 per month for use of the rolling stock," and the Georgia Southern was to receive the same per cent of the net earnings of said whole line after deducting expenses and monthly rentals.   Under this agreement the Georgia Southern was being operated and run by the receivers in December, 1877.

The record shows that on the night of the 8th of December, 1877, the defendant in error, Bigelow, was put off the railroad cars about six miles from Rome, Georgia, on the southward bound train going towards Cave Spring, Floyd county, Georgia, between the hours of 9 o'clock and 11 at night, where there was no place for accommodating travellers nor temporary refuge from the inclemency of the weather.

For this ejection from the cars run on the railroad track of the Georgia Southern Railroad, Bigelow brought his action for damages against the Georgia Southern Railroad Company, the plaintiff in error, in Floyd superior court.

Under the evidence submitted and charge of the court, the jury returned a verdict in favor of the plaintiff below for the sum of seventeen hundred and fifty dollars damages, with costs. Whereupon defendant below made a motion for a new trial, on the following grounds:

(1.) Because said verdict is contrary to law.

(2.) Because said verdict is contrary to evidence and weight of evidence.

(3.) Because the verdict is excessive, contrary to law and evidence, and there being no evidence to support the same.

(4.) Because the court erred in not sustaining exceptions to the writ, and in holding the service made on Printup, as director of the Georgia Southern Railroad Company, and on A. S. Crane, as agent, was under the evidence insufficient to bind the defendant.

(5.) Because the court overruled the demurrer to the declaration.

(6.) Because the court erred in ruling out and not permitting Murphy, a witness, to answer the following question asked by defendant : " What time was this ticket out? On Saturday or Saturday night?"

(7.) Because the court erred in refusing to give the following charge in its entirety as requested in writing :

" A railroad company and its agents have the right to prescribe rules and regulations for selling tickets, and limit the time in which they shall be used. [And if the purchaser of such ticket is informed of such limitation he is bound thereby."] The part in brackets the court refused to give in charge to the jury as requested.

(8.) Because the court erred in charging the jury that, by the ticket offered in evidence as having been issued to plaintiff below, the plaintiff had the right to return on the ticket at any time until 12 o'clock at night on the 8th of December.

(9.) Because the court erred in giving to the jury that portion of his charge set forth in the ninth ground of the

motion as set forth in the record; also, that he erred in reading to the jury sections 3066, 3067, 3070,of the Code, there being no evidence to justify the verdict on said sections.

In the argument before this court counsel for plaintiff in error relied mainly upon three errors assigned in the motion :

(1.) That there was no sufficient legal service on the defendant, the Georgia Southern Railroad.

(2.) In the legal construction the court gave to the railroad ticket purchased by plaintiff below and on which he was proposing to return to Cave Spring.

(3.) Because the verdict is excessive in amount under the evidence.

.· 1. Was the service sufficient on W. S. Crane, as agent, and Printup, as director? The Code provides, "that service of all bills, subpœnas, writs, attachments, and other original process necessary to the commencement of any suit against any corporation in any court of law or equity, except as hereinafter provided, may be perfected by serving any officer or agent of such corporation, or by leaving the same at the place of transacting the usual business," etc. Code, §3369. It is contended that Crane was not the agent of the Georgia Southern Railroad Company, but of the Selma, Rome and Dalton Railroad Company, as shown by the evidence. But the evidence shows that the Georgia Southern was being operated by the receivers of the Selma, Rome and Dalton Railroad, a foreign corporation, using its own rolling stock to operate said road and dividing its earnings with said Georgia Southern, and necessarily the agents who aided in Georgia in operating said road within the limits of its territory were likewise·agents of the Georgia Southern, at least to the extent of the interest said Georgia Southern had in the running of said line. If these local agents acted under the charter and franchises granted to the Georgia Southern Railroad, and that road re-

ceived, through those agents in connection with others, the profits arising from the operating said road in this state, or even a proportion thereof, that constituted them agents of said Georgia Southern in the sense that is contemplated in the 3369th section of the Code, and a service on such agent would be a sufficient service in law on said corporation, especially where it appears that Printup, the other party served, was a director, and the only resident director, of said Georgia Southern residing in this state. His service, in connection with the service on the agent, W. S. Crane, we deem all sufficient under the law. Code, §3369; 17 Wall., 449; 12 Ill., 333; 49 N. Y., 148; 51 Miss., 525; 8 Metcalf, 252.

2. Was there error in the instruction given by the court to the jury that the railroad ticket owned by plaintiff below did not expire till 12 o'clock at night on the 8th of December? The evidence shows that about noon on the 6th of December, 1877, the plaintiff purchased what is known as a return ticket to go from Cave Spring to Rome and return. The ticket had on it these words: "Selma, Rome and Dalton Railroad. One seat. Rome and return, if used within two days *from the date sold.*"

On the reverse side of the ticket was stamped, "Selma, Rome & Dalton R. R., December 6th, Cave Spring."

It appears from the evidence, that on the night of the 8th of December, before 10 o'clock, the plaintiff below entered on the car at Rome, of the defendant below, for the purpose of returning on this ticket to Cave Spring, at which place he had purchased the ticket; that on presenting the ticket the conductor refused to receive it, claiming the time limited to use it had expired, and against the will of plaintiff he was forced to leave the car, on his refusing to pay the usual fare. This ticket was issued and sold to plaintiff on the 6th of December; by it the plaintiff had the right to pass on the cars of the defendant below over the road from Cave Spring to Rome any time from the day of its purchase, and return if within two days

from the date sold. The date the ticket was sold was 6th December, and that date continued the 6th up to 12 o'clock that night, when a new date commenced, to-wit, the 7th of December; within two days, then, from 12 o'clock the night of the 6th, the plaintiff was entitled to return on the cars from Rome to Cave Spring, by the terms of this ticket. He boarded the cars on the night of the 8th, and was ejected before midnight, between 9 and 11 o'clock, according to the testimony. Under our view of this contract as evidenced by the ticket, the plaintiff was entitled to return on it till 12 o'clock the night of the 8th of December to Cave Spring, and we see no error in the instruction the court gave the jury on this subject. 2 Wall, 449; 2 Chitty on Con. (last edition), sect. 1064; 23 Mich., 1.

3. Was the verdict excessive in amount, under the proofs in the case? Courts are reluctant to interfere with the verdicts of juries in assessing damages for torts. The question for damages being one for the jury, the court should not interfere unless the damages are so small or so excessive as to justify the inference of gross mistake or undue bias. Code, §2947.

Whether the action of defendant below in ejecting plaintiff from its cars was a tort accompanied with aggravating circumstances, was a question for the jury, and exclusively within their province to decide, subject of course to the rule that they are not influenced by "gross mistake or undue bias." Here was this defendant in error, who had made a contract with the plaintiff in error to be transported on its train from Cave Spring to Rome and return within a time designated. Under that contract and by authority of it, for which he had paid his money, he was on the cars of the plaintiff in error; the night was cold, inclement and dark, and it had been raining and was then freezing. Without authority of law, and in violation of the legal terms of their own contract, the defendant in error, an old man 65 years of age, was put off the cars in freezing weather, between the hours of 9 and 11 o'clock

at night, at no depot or stopping place, with no shelter or accommodation at which to remain, and his only chance was to follow the track of the railroad, on which he was painfully injured by falling through a trestle on the road. Taking all the circumstances together, we are not prepared to say that the damages were so excessive as to justify the inference of gross mistake or undue bias on the part of the jury. The defendant in error thus ejected was put in great peril both as to life and limb, and under all the circumstances we think he should be properly compensated in damages, not only to satisfy his own wrongs and injuries, but to deter the wrongdoer from repeating the trespass. 49 *Ga.*, 504; 54 *Ib.*, 224; 26 *Ib.*, 250; 10 *Ib.*, 37; 27 *Ib.*, 294; 3 So. Ca. Rep., 58; 36 Miss., 660; 32 Miss., 1. Under our view of the law and facts of this case as the record discloses, we find no such error as would warrant us in reversing the judgment of the court below refusing a new trial.

Let the judgment of the court below be affirmed.