THE ATLANTA AND WEST POINT RAILROAD vs. CONDOR.

1. Under the evidence in this case, the plaintiff was entitled to recover something for the indignity put upon him by the opprobrious language used and by the assault and battery inflicted by at least one of the employés of the company, while he was in its care, and entitled to its protection, as a passenger in its cars, it appearing that in the encounter, out of which the action grew, the company's brakeman was the aggressor, and that he had no right, under the regulations of the road, to refuse to let the plaintiff pass from the ladies' car to the other car, it being undisputed that this was allowed, even when the train was in motion, whenever it was required by a necessary occasion, or whenever the passenger saw proper to do so, either for his convenience or pleasure.

2. Although there was no loss of time and no hinderance of the plaintiff in the pursuit of his business, and although there was no considerable amount of physical suffering occasioned him, yet he was subjected to indignity, his feelings were outraged, and he was degraded in the eyes of his fellow-passengers by being assailed with coarse and vituperative language and blows by at least one of those who owed him protection and kind and hospitable treatment. In such a case, general or exemplary damages was the only compensation he could recover for this violation of his rights, and the measure of such damages is referred by express law to the enlightened conscience of an impartial jury. In this case, it does not appear that the finding was so excessive or exorbitant as to show that the jury were biased in favor of the plaintiff or against the defendant, or that they misconceived their power or departed from their duties.

December 15, 1885.

Railroads. Damages. Negligence. Verdict. Before Judge HARRIS. Coweta Superior Court. March Term, 1885.

Condor brought his action of trespass against the Atlanta and West Point Railroad Company, laying his damages at $5,000. On the trial, the evidence for the plaintiff was, in brief, as follows: The plaintiff was a passenger on the defendant's train from Palmetto to Newnan. His baggage was in the smoking-car, and he was sitting in the ladies' or first-class car. As the train approached a small station, called Powell's station, some six miles from New-

nan, and had passed the switch, the plaintiff went out on the platform and stood on the steps. The brakemen requested him to go inside. He refused, and said that the brakeman and his whole train could not put him in. He knew that it was against the rules of the company to ride on the steps of the platform when the cars were in motion. Afterwards, as the train approached Newnan, the plaintiff started to go to the smoking-car to get his baggage. The brakeman was standing against the car door. The plaintiff asked him to let him out, stating his object, but the brakeman would not let him out. The plaintiff took hold of the door and tried to force it open, but the brakeman stood against it and prevented his doing so. The plaintiff gave it another jerk and partly succeeded in opening it. The conductor came from the smoking-car and asked the plaintiff what was the matter. The plaintiff told him he wanted to go to the smoking-car and get his baggage. The conductor told the brakeman to open the door and let him go, which the latter did The conductor asked the plaintiff what was the matter. He replied that the damned brakeman had insulted him, or had acted in an ungentlemanly way. The brakeman called him a liar, and as he turned, struck him on the side of the face with his fist. The conductor caught him in the collar and forced him back against the railing, and the brakeman struck him again. Another passenger told the conductor to turn him loose. The conductor did so and got between the plaintiff and the brakeman, as if to separate them. The plaintiff was ruptured before that time, and his truss was displaced, causing him pain for several days. He was not, however, compelled to have any medical attention, or prevented from continuing his business, but left the train at Newnan, walked some distance, took another train and continued to attend to his usual pursuits. He was not aware of any rule preventing passengers from going from one car to another. It was frequently done. He had often ridden on the defendant's trains before, and had gone from one car

to another, while they were in motion, without objection. There were other passengers on the car besides the plaintiff.

The evidence for the defendant was, in brief, as follows: As the train approached Powell's station, the plaintiff and another passenger went out on the platform, and the plaintiff was standing on the steps. The brakeman requested him to go inside of the car, as it was against the rules of the company to ride on the platform or steps, and he should not be allowed to get off while the cars were in motion. It was the duty of the conductor and brakeman to make such requests and enforce such rules. The other passenger went in; the plaintiff did not notice the request, which was repeated several times, the brakeman touching him on the shoulder to attract his attention. The plaintiff told him in an abrupt manner to go away. The brakeman said he must repeat the request ; also that if he did not come in, the brakeman would have to have him put in. The plaintiff said he would not go in, and that the brakeman " and his whole God-damned train " could not make him go inside. He jumped off, shook hands with a person standing on the ground, jumped back, and went inside of the car. When the signal blew for Newnan, the brakeman took his position at the door of the car and against it. The plaintiff came up and caught hold of the knob. The brakeman asked him please not to open the door until the train reached the station. The plaintiff reached out, caught hold of the frame of the door and jerked it open. The brakeman closed it, and the plaintiff jerked it open again. The conductor came up and told the plaintiff to wait and not open the door until they reached the station. The plaintiff then said he wanted to go into the next car and get his baggage. The conductor told the brakeman to open the door and let the plaintiff pass, which he did. The plaintiff stepped upon the platform, and said he had paid his fare and would ride " where he damned pleased." The conductor asked him what was the trouble. He

turned, and pointing at the brakeman, said, "That God-damned scoundrel insulted me." The brakeman reached across, caught the plaintiff by the collar and said, "You cannot curse me." The conductor stepped between them, pushed them apart at arm's length and told the brakeman to stop, which he did. The conductor told the plaintiff that he was wrong; that the brakeman was only carrying out the instructions given him by his superior officer in keeping passengers off the platform while the train was in motion. The plaintiff started off, and said that the brakeman had insulted him, and that he would leave it to him (the brakeman) himself. The latter shook his fist at him and said, "If you say that, you lie, and you know it." The train stopped, and the brakeman went about his work, while the plaintiff left the train. The conductor is still employed by the defendant; the brakeman was suspended for sixty days, but was afterwards re-instated. The cars were running ten or twelve miles an hour at the time of the difficulty. There is no rule of the company prohibiting passengers from passing from one car to another while the train is in motion, and they had done so before.

The jury found for the plaintiff $1,000. The defendant moved for a new trial, because the verdict was contrary to law and evidence, excessive and contrary to the following charge of the court : "The fact that W. A. Hudson was in the service of defendant did not deprive him of the right of self-defence; and if the jury should believe that said W. A. Hudson committed an assault upon plaintiff, he might give in evidence to the jury any opprobrious words or abusive language used by him, and such words and language may or may not amount to a justification, according to the nature and extent of the battery; all of which shall be determined by the jury. The defendant might make this defence just as Hudson could have done had he been indicted."

The motion was overruled, and the defendant excepted.

BIGBY & DORSEY; BUCHANAN & BREWSTER, for plaintiff in error.

A. D. FREEMAN, for defendant.

HALL, Justice.

No question is made as to the plaintiff's right to bring or maintain this action, nor is any exception taken to any ruling or charge of the court. The motion for a new trial proceeds upon the grounds that the verdict is contrary to law and evidence, decidedly and strongly against the weight of evidence, and that the damages found are so excessive as to show improper bias and prejudice on the part of the jury to the plaintiff and against the defendant, or that they misapprehended the case they had to try. The judge who tried this case was unwilling to disturb this finding ,and after a very careful examination of the records, we cannot say that he committed any error in so doing, or that he abused, in the slightest degree, the discretion entrusted to him by the law.

1. Under the evidence, the plaintiff was entitled to recover something for the indignity put upon him by the opprobrious language used, and by the assault and battery inflicted by at least one of the employés of the company while he was in its care and entitled to its protection as a passenger in its cars. In the encounter, out of which the action grew, the company's brakeman was the aggressor; he had no right, under the regulations of the road, to refuse to let the plaintiff pass from the ladies' car to the other car, for it is an undisputed fact that this was allowed, even when the train was in motion, whenever it was required by a necessary occasion, and whenever the passenger saw proper to do so, either for his convenience or pleasure.

There was no necessary conflict in the evidence of the witnesses examined; it could be easily reconciled, and was doubtless so reconciled, as it was incumbent upon the jury to do, in accordance with the well-settled rule of law.

2. There was no loss of time, and no hinderance of the plaintiff in the pursuit of his business, neither was there any considerable amount of physical suffering occasioned him; but that he was subjected to indignity, and that his feelings were outraged, and that he was degraded in the eyes of his fellow-passengers by being assailed with coarse and vituperative language and blows, by at least one of those who owed him protection and kind and hospitable treatment, is undeniable. General or exemplary damages was the only compensation he could recover for this violation of his rights, and the measure of such damages is referred by express laws to the enlightened conscience of an impartial jury. Under these circumstances, we cannot say that the amount found in this case was excessive, and least of all, that it was so exorbitant as to show that the jury was biased in his favor, or prejudiced against the defendant, or that they misconceived their powers, or departed from their duties in this instance. *Georgia Southern Railroad Co. vs. Bigelow*, 68 *Ga.*, 219, 224, and authorities cited; *Western and Atlantic Railroad vs. Turner*, 72 *Ga.*, 292.

Judgment affirmed.