GEORGIA RAILWAY AND ELECTRIC COMPANY *v.*
BAKER, by next friend.

1. Although a street-railway company may not be required by law to carry a passenger on any other line than the one over which the car originally boarded runs, still if such company holds out that it will, when fare is paid on the first car, issue a transfer giving the right to ride on other cars of its lines, a request for a transfer is an acceptance of this offer, and the delivery of the transfer completes a contract under which the passenger is entitled to demand the right to ride on both the original car and the transfer car; and the amount paid to the conductor of the first car is the consideration for the right to ride on each car. The right to ride on the car to which the passenger is transferred is in no sense a gratuity.

2. If a mistake is made by the conductor of the first car in issuing a transfer, and the passenger presents the transfer to the conductor of the second car and gives a reasonable explanation of the mistake of the conductor of the first car, the conductor of the second car must at his peril determine whether the passenger is entitled to a ride upon the transfer, notwithstanding it does not upon its face show such right.

3. A condition on a transfer issued by a street-railway company, that "the holder, by accepting, agrees that should any controversy arise as to its validity, holder will pay fare and call at company's office for correction," is unreasonable and void.

4. A threat by the conductor of the second car, to expel a passenger on account of a mistake in the transfer slip, is a legal wrong, giving the passenger a right of action against the company, notwithstanding there is nothing insulting in the words or manner of the conductor, further than that a mere threat to expel might be deemed an insult.

5. In an action brought to recover damages for a threat to expel a passenger from a street-car, who presented a transfer to the conductor which was defective through no fault of the plaintiff, but who, under the facts of the case, was entitled to a ride on the car, the measure of damages is not limited to the amount paid to prevent an expulsion, but general damages may be recovered as for an inexcusable trespass, even though there be no aggravating circumstances connected with the threat of expulsion.

6. While the evidence demanded a finding in favor of the plaintiff so far as the right to recover was concerned, the erroneous instruction in relation to the worldly circumstances of the parties was of such a character as to require the granting of a new trial.

Submitted March 3,—Decided May 18, 1906.

Action for damages.    Before Judge Calhoun.    City court of Atlanta. April 6, 1905.

Mrs. Baker sued the street-railway company for damages. The petition alleged, that she boarded a car of the defendant at Grant park in the city of Atlanta, about 3.30 p. m., that she paid her fare and requested of the conductor a transfer to the Marietta-street line, and, in response, a transfer was given to her by the conductor. On arrival at the transfer point established under the rules of the company, she inquired how long she would have to wait for a Marietta-street car, and the conductor told her that the car was then approaching, and pointed to it. The plaintiff alighted, and immediately boarded the Marietta-street car, which was the first car on that line passing after her arrival. The conductor of this car approached plaintiff, and she gave to him the transfer slip which had been given to her by the conductor of the other car. He refused to honor the transfer, and demanded that she pay another fare, threatening to eject her if she refused to do so. This was all done in an insulting manner, the conductor charging her with having had the transfer since eleven o'clock a. m. The bell was rung in order to eject her, and she paid to the conductor a fare. He was proceeding to eject her at the time, and she paid the fare under

protest. The car was filled with passengers, and the threats of the conductor that he would eject her were made in the presence of these passengers, among whom were a number of her acquaintances. She was humiliated and mortified, and her feelings greatly wounded. The petition avers that it was the duty of the defendant to carry her to her destination on Marietta street without extra pay; and she prays for damages, actual, punitive, and vindictive. Damages were laid in the sum of $1,500. By amendment a copy of the transfer slip was attached to the petition as an exhibit. Upon this transfer appears the following: "This transfer is good for one continuous trip on the route punched, provided it is presented at the first intersecting point by the person to whom originally issued and used on the date and before the expiration of time punched and upon first car passing transfer point for route shown, and is otherwise subject to the rules of the company." "This transfer is issued upon further condition, and holder by accepting agrees, that should any controversy arise as to its validity, holder will pay fare and call at company's office for correction." On the transfer appear the names of the streets on which the lines of the company run. The street on which the first car was boarded is marked by a punch. Marietta street is not so marked, but there is a punch mark on Magnolia street. The punch marks indicate eleven o'clock as the hour at which the transfer was issued. But this mark does not appear in the column headed "A. M.," or in the column headed "P. M."

The defendant filed an answer, in which it admitted some of the allegations of the petition and denied others. The defense set up was in effect a denial of liability, on the ground that the transfer did not upon its face confer the right to ride. The allegations as to the alleged wrongful conduct of the conductor were all denied. The trial resulted in a verdict in favor of the plaintiff, for $60. The defendant excepted to the judgment refusing a new trial.

*Rosser & Brandon* and *W. T. Colquitt,* for plaintiff in error.

*O. E. & M. C. Horton,* contra.

Cobb, P. J. (After stating the foregoing facts.) It is conceded that there is no law of this State, and no valid ordinance of the city of Atlanta, requiring street-railway companies to issue transfers to passengers, authorizing them to ride upon a car other than the one which they originally board. This fact being con-

ceded, the argument is made that the right to ride upon the second car, resulting from the issuance of the transfer, is a mere gratuity. This is not true. The issuance of transfers is a voluntary act on the part of the company; using the word "voluntary" in its ordinary sense. The company is not bound to issue transfers. It is under no obligation to transport the passenger to any other point than one on the line of the car originally boarded. But when the company voluntarily and without any compulsion adopts the custom of issuing transfers for the consideration paid the conductor of the first car, it binds itself by a contract to transport the passenger from the point where he enters the car to a point on any line to which, under the custom of the company, it is usual to issue transfers. In the absence of a custom, the company simply sells to the passenger for the fare paid the right to ride between points on the first line. Under a custom of issuing transfers, the offer is made for a stated consideration to transfer the passenger from a point on one line to a point on any other line embraced within the custom. When the passenger pays his fare to the conductor of the first car and requests a transfer, and a transfer is delivered, the offer arising under the custom is accepted, and the contract becomes complete, and the one fare is the consideration for the transportation of the entire journey. The company does not contract merely for the journey on the first line and donate a journey on the second line. Some companies will issue tickets entitling passengers to six rides for twenty-five cents, when the usual fare paid is five cents for each ride. No one would seriously contend that only the first five rides, under such circumstances, were paid for, and the sixth was a mere donation. The company is in the business of selling rides. It may fix the amount which shall be paid for a ride upon either one or more cars. When this amount is paid, the passenger is a purchaser of a ride between the points covered by the contract. This is true whether or not, as an original proposition, the passenger could demand a right to ride between these points for the amount paid. The position that the transferred passenger is receiving a mere gratuity when he rides upon the second car is untenable.

2. Whether the transfer slip used by a street-railway company is to be looked to as conclusive evidence of a right to ride on the second car, and whether any mistake made in the issuance of the

transfer, resulting in its showing upon its face that the right to ride upon the second car does not exist, is a question about which. the courts are not agreed. According to some of the decisions, the transfer received must be considered as conclusive evidence of the passenger's right to ride, although it may not in its true sense express or evidence the contract into which the passenger enters. These decisions hold that if the transfer is inaccurate, the expulsion of the holder upon the refusal to pay additional fare is justified, although the mistake or defect is due to the negligence of the conductor who issued the transfer. On the other hand, there are numerous decisions which deny the transfer such conclusive force. and dignity, and rule that the passenger has a right to rely upon the acts and statement of the conductor issuing the transfer, and if he is expelled from the second car on account of a mistake or defect in the transfer, notwithstanding he has acted in good faith and offered a reasonable explanation, the carrier is liable in damages for such expulsion. See the cases cited in *Hornesby* v. *Ga. Ry. & El. Co.,* 120 *Ga.* 913, and in the note to that case in 1 Am. & Eng. Annotated Cases, 392. In the *Hornesby* case it was held that when a street-railway company voluntarily offered to passengers the right to a transfer from one of its cars to another, to continue the journey without the payment of additional fare, it was reasonable to require, as a condition precedent to the exercise of this right, that the passenger should tender to the conductor of the second car a punched transfer ticket, which must be used within the time indicated by punch marks, provided a car upon which the passenger could be conveniently and comfortably transported passed the transfer point within the time so limited. The question now before us was not directly involved in that case. Attention was then, however, called to the conflict of authority above referred to, on the question now under consideration. We think that our rulings in reference to tickets issued by ordinary railway companies are more in line with those authorities that hold that the transfer slip is merely evidence of the contract, and that if any mistake is made in issuing the transfer, so that it does not express the true contract, the conductor of the second car, on presentation of the transfer, and a reasonable explanation of the mistake that appears on the slip, would at his peril decline to transport the passenger, if as a matter of fact a proper transfer was called for and the pas-

senger was in no fault in reference to the matteer. And we think this is the true rule. As was aptly said by Caldwell, J., in O'Rourke v. Citizens' Street-Railway Co., 103 Tenn. 132 (52 S. W. 872), "It is the contract, and not the ticket, that gives the right to transportation. The ticket is but an evidence of the contract, made out and furnished by the carrier; and if it fail to disclose the true contract, the fault is with the carrier, and it is responsible for the natural consequences of the variance. The passenger is not required in law, nor allowed in fact, to print or write or stamp the ticket. The carrier alone has that right, and the passenger is authorized to believe and presume that it will be properly exercised, and that the ticket, when delivered, is a faithful expression of the contract as made." In the case just quoted from, there was printed on the transfer a statement requiring the passenger to examine the date, time, and direction, and see that the transfer was correct. There was also a statement that the passenger accepting the transfer agreed "to read and be bound by all the conditions on the back" of the same, "subject to the rules of the company." These conditions, so far as they required the passenger to read the transfer and examine the date, etc., were held to be unreasonable, for two reasons. In the first place, the time usually occupied in making a trip on a street-car was not such as to permit a compliance with the regulation; and in the second place, if there was time for the purpose, the transfer was more or less complicated in its nature, and an inexperienced though intelligent passenger, who happened to be unacquainted with the system of punch marks, names of streets, etc., of the particular company, would be unable to ascertain whether it was correctly issued or not. In that case the transfer was of such a character that even an intelligent officer of the company, who testified as a witness, was unable to explain the system to the satisfaction of the trial judge. As was said by Caldwell, J., in the opinion: "It can not be fair or just or reasonable to require passengers, in the hurry of rapid street-car travel, to decipher at their peril a check whose meaning so intelligent a judge can not ascertain by careful and deliberate inspection." In Laird v. Pittsburg Traction Co., 166 Pa. St. 4, a similar condition on a transfer check was under consideration; and it was said: "If that is intended to be regarded as a reasonable regulation, the check should be given to the passenger before he leaves the car, a suffi-

cient length of time to afford him at least an opportunity of reading it and, if wrong, having it corrected."

The contract between the carrier and the passenger is made by the offer held out by the company, although voluntary on its part, to transport the passenger on two lines. The transfer slip is mere evidence of the right to ride upon two lines; and if there has been in fact a contract between the passenger and the agent of the company in charge of the first car, the right to ride upon the second car is complete, although the evidence of the right is defective. We are aware that this rule may lay the carrier open to imposition in some cases. But, on the other hand, a contrary rule would impose upon the traveling public, and especially those members of it who are inexperienced and uninformed, a serious burden, and one which it is not reasonable or proper that they should be compelled to carry. It is true that the carrier is under no obligation to make the contract; but when it voluntarily enters into one, it is none the less a contract, and, on account of the public character of the business in which it is engaged, the courts have authority to determine whether the rules and regulations adopted by it in reference to the conduct of its business as a carrier of passengers are reasonable and proper. If what is contained in the statements on the transfer slip were embodied in an express contract based upon a sufficient consideration, it may be that the courts would not interfere. .

3. It is said that there is a condition on the transfer that if there is any controversy in reference to the same, the holder will pay fare, and call at the company's office for correction. There was a similar condition on the transfer involved in the case decided by the Supreme Court of Tennessee, above referred to. In reference to this stipulation, the court said: "This condition is unreasonable, in that it makes the conductor, for the time, the sole judge of the sufficiency of the ticket, and requires the passenger to pay additional fare though his ticket may be refused without sufficient cause; and further, in that it requires the wronged passenger, who so pays, to apply for refund at the office of the company, which must be remote from the houses and business places of most passengers, and then limits the amount to be received by such person to that wrongfully exacted. It puts all of the burden of the 'controversy' upon the wronged passenger, and none upon the wrong-

doing company, and thereby makes the just suffer for the unjust."
We thoroughly concur in this view. Counsel in their argument say
that the decision of the Supreme Court of Tennessee which we have
followed was based upon a statute of that State requiring a street-
railway company to issue transfers. There is no reference to a
statute in the opinion of the court. In addition to this, none of
the reasoning of the learned judge who delivered the opinion is
based upon any statute, and the questions seem to have been
solved merely by the application of general rules of law.

4. The averments of the petition, that the conductor of the sec-
ond car refused to recognize the transfer and demanded ·payment
of a second fare, and threatened to eject the plaintiff, in an in-
sulting manner, were not sustained by the proof. The evidence,
however, does show that he refused to accept the transfer, and that
he demanded a second fare, and that he told the plaintiff that if
she did not pay the second fare he would be compelled to eject her
from the car. But the plaintiff testified that he acted in a gentle-
manly manner, and that there was nothing insulting, either in his
words or in his conduct, other than such an insult as may arise
from a simple threat to eject. It is a case, therefore, where the
conductor has simply complied with what he understood to be the
rules and regulations of the company by which he was employed.
In complying with these rules, although he might have had the
manner of a perfect gentleman, and used language which would be
proper in the most polite society, still, if the plaintiff had a right
to ride upon the car, and was threatened with expulsion, no matter
in what words, it was a breach of the duty which the company owed
her as a passenger, and gave her a right of action against the
company. A jury would have been compelled to find that the ex-
planation made by the plaintiff of the mistake in the transfer was
reasonable, and although the conductor was placed in an embarrass-
ing position, under the law he was compelled to choose between
two alternatives; and if he made a mistake and used a threat to ex-
pel a passenger who had a right to ride on the car, the company
would be liable, without reference to the manner in which he made
the ·threat and his good faith in the matter.

5. There are some decisions which hold that the damages re-
coverable for an expulsion resulting from the wrongful refusal to
accept a transfer, the mistake being due to the conductor of the

initial car, are compensatory only.  Pine *v.* St. Paul City Ry. Co., 50 Minn. 144; Eddy *v.* Syracuse Rap. Trans. Co., 50 N. Y. App. 109.  In Ohio it was held by a circuit court that the passenger's recovery was limited to the additional fare paid, when there were no aggravating circumstances.  Carr *v.* Toledo Trac. Co., 9 Ohio Cir. Ct. Rep. 281.  But we think the decision by the Supreme Court of Pennsylvania in the case of Laird *v.* Pittsburg Trac. Co., 166 Pa. St. 4, takes the better view of the matter.  It was there held that in such a case the damages are not limited merely to the amount sufficient to compensate the plaintiff for the trouble and delay caused by the conduct of the company and the expense necessary to complete his journey, but he is entitled to substantial damages, as for an inexcusable trespass.  In that case there was a request to instruct the jury that the damages to be recovered were simply those resulting from the trouble and inconvenience caused by the expulsion from the car.  In commenting on the propriety of this instruction, Sterrett, C. J., well says: "To sanction such a measure of damages, as is suggested in this point, would tend to encourage rather than prevent the commission of indignities to which no well behaved passenger in a public conveyance should be subjected."

6. The charge of the court was in effect an instruction that the plaintiff was entitled to recover.  There would have been no error in instructing the jury in terms to this effect.  Under the undisputed facts, a recovery was demanded, and the only question to be determined was the amount of the verdict.  In the instructions on the subject of damages the court charged: "The worldly circumstances of the parties and all the attendant facts are to be weighed."  This charge was assigned as error, for the reason that there was no evidence to authorize it.  There was no evidence as to the worldly circumstances of the parties.  While the verdict is not large, and possibly a larger verdict, as a recovery of general damages, would be permitted to stand, still the question of what should be assessed as general damages was a matter for determination by the jury, and we can not undertake to say that the jury was not misled by the erroneous charge into giving a larger amount than they in their judgment would have thought sufficient, in the absence of such an instruction.

*Judgment reversed.  All the Justices concur, except Fish, C. J., absent.*