2428.  GEORGIA SOUTHERN & FLORIDA RAILWAY
                    COMPANY v. RANSOM.

Under the evidence in this case, a verdict for $1,000 damages is manifestly
out of all proportion to the injury proved, and is so excessive as to de-
mand the inference that the jurors were influenced by undue bias, par-
tiality, or prejudice.
                    DECIDED SEPTEMBER 20, 1910.

Action for damages; from city court of Cordele—Judge Strozier.
December 22, 1909.

*John I. & J. E. Hall, J. T. Hill,* for plaintiff in error.

*F. G. Boatright,* contra.

HILL, C. J.  Mrs. Ransom brought suit against the Georgia
Southern & Florida Railway Company to recover damages for an
alleged tort of a conductor of a passenger-train in addressing to her
certain language which she alleges was "unnecessary, cruel, wilful,
and wanton, and was intended to and did cause her great mortifi-
cation, mental pain, and humiliation."    She recovered a verdict
for $1,000, and the case is here on exception to the judgment over-

ruling the defendant's motion for a new trial. The case was before this court on a previous occasion, when the plaintiff recovered a verdict for $700 on substantially the same state of facts (5 *Ga. App.* 740, 63 S. E. 525). It is unnecessary to set forth again in extenso the evidence, which can be found fully stated in the previous decision of this court. Briefly, the evidence makes the following case: Plaintiff was a passenger on defendant's train from Dakota to Cordele. She was accompanied by two small children, one a baby in arms, and the other about two years of age. When the conductor approached her and asked for her ticket, she could not find it, and he told her to look for it, to see if she could not find it, and passed on. The conductor approached her a second time and asked her if she had found her ticket, and she replied that she had not. The conductor then told her again to look further for her ticket, and again passed on. He returned a third time, when the train was in Crisp county, nearing the point of destination of the passenger, and she still had not found her ticket, and did not offer a ticket or cash fare. The plaintiff's exact testimony on this point is as follows: "The conductor came to me and asked me for my ticket, and I told him I had lost it, and he went away and told me he would give me some time to find it, told me to look for it, and probably I would find it. In a few minutes he came back again, and I still hadn't found it, and I told him I hadn't found it, and he said, 'Well,' and he stated the fare, and I told him I didn't like to have to pay another fare without more time to search for my ticket, and he said I must pay fare if I rode on that train, and I told him I had paid it, as for that matter, and intended to pay it again, if I couldn't find my ticket; and he asked me then if I wanted him to stop at Arabi and put me off, and I told him, 'No,' I wanted him to go to Cordele where I had paid him to go; and he said he hadn't seen any fare, and I said, well, I had paid and I would pay again, if I couldn't find my ticket. He went away for a few minutes, and he asked me again, and I still hadn't found it, and he says, 'You are a woman. I see you are trying to take advantage of me, and I will pay your fare for you here in the presence of these gentlemen.' And I says, 'I haven't asked you to pay my fare;' and he said, 'No, you haven't asked me, but it is an advantage you are taking.'" The gentlemen to whom the conductor referred were two passengers sitting right behind the plaintiff, and

one to her left, across the aisle. She testified further that the conductor spoke in a very harsh manner, and that after addressing to her the remarks above quoted, he went away, saying nothing more at that time. Subsequently she found her ticket and delivered it to the conductor, who said, according to her testimony, "I thought you had lost it." This concluded the incident. Immediately upon arriving at Cordele the plaintiff sought out an attorney and filed her present suit for damages, alleging the language of the conductor and his manner as constituting the tort complained of.

It may be stated that there is no conflict between the evidence for the plaintiff and that for the defendant, except that the plaintiff testified that she did not refuse to pay her fare, but stated that she would do so provided she did not find her ticket; and the conductor and the two passengers who were introduced as witnesses all three testified that she did positively and unconditionally decline to pay her fare when the conductor demanded it of her on the third interview. She testified also that the language of the conductor was impolite and harsh. The conductor and the two passengers who were immediately behind the plaintiff, and who testified as to the entire controversy between the conductor and the plaintiff, stated that the conductor's manner was polite, courteous, and considerate. It will thus be seen that there was only an apparent conflict upon the question as to whether she did positively refuse to pay her fare after he came to her the third time, and we think the only fair conclusion from her own language to the conductor was that she expressed no present intention of paying the fare, although nearing her destination. But for the purposes of the case we must take the testimony of the plaintiff as the truth of the transaction, and if in that testimony we find sufficient facts to justify a verdict for $1,000, the verdict must stand.

When the case was before this court on a previous occasion, in discussing the amount of the $700 verdict, we gave it as our opinion that the evidence for the plaintiff made an "extremely weak" case for a recovery, and that the verdict for the amount then rendered was "large to the point of generosity;" and we further stated that in our opinion the jury were "very generous and chivalric, probably more so than the facts warranted." While, as before stated, there is no substantial difference between the evidence on the first and second trials as to what took place between the passenger and the

conductor, there is considerable difference in the testimony on the first and second trials as to the effect of the alleged treatment by the conductor.   On the first trial she proved a very nervous condition resulting from the interview between her and the conductor, and there was no evidence before that jury that there was any other cause for such condition.   On the second trial there was testimony presented to the jury that both before and since the trial the plaintiff was frequently found in a nervous condition, and was under treatment for such condition by her physician; and the evidence on the second trial would seem to eliminate the nervous condition of the plaintiff as an element of damage, and we think it fair to limit the question of damages to what actually occurred between the plaintiff and the conductor on the train.   Were the language and conduct of the conductor, from the plaintiff's standpoint, sufficiently tortuous and inexcusable to require or justify a verdict for $1,000?   It is insisted that the amount of the verdict is excessive, and, after a review of the entire evidence, we have arrived at the same conclusion.   We do not think that either the language or the conduct of the conductor, construed most strongly against him and in favor of the contention of the plaintiff, would warrant a verdict for $1,000 as damages.   The conductor gave the passenger, it would seem, a reasonable time to make search for and find her ticket.   She did not find it, and she did not offer to pay fare, although she had failed to find her ticket.   The conductor was presented, solely by the conduct of the passenger, with a difficult and embarassing problem to solve.   It was his duty as an official to collect the ticket or the fare, and, failing to do so, it was his duty to stop the train and put the passenger off at some convenient place; which he offered to do.   But the woman had in her arms a baby, and was leading by the hand another infant.   There was thus a conflict between the conductor's feelings as a man and his duty as an official, and he endeavored to reconcile the two.   If his language was not apt or conciliatory, it was certainly neither harsh nor wholly unwarranted.   The contention that his characterization of the passenger as a "woman," instead of as a "lady," was an insult is too frivolous and absurd for serious consideration.   His statement that she was trying to take advantage of him because of her sex, while probably an equivocal expression, did not necessarily import falsity of the passenger's claim that she had purchased her ticket.   It was

but the expression by the conductor of his opinion of the situation. The fact that he offered to pay her fare was certainly not a very grave insult, if an insult at all, and was probably intended by the conductor for his own self-protection as an official; and his calling upon the passengers to witness the payment of the fare was doubtless for the same purpose, and was not for the purpose of calling attention to any improper conduct of the woman; and these gentlemen, as witnesses, fully rebut any conclusion of this kind, by their testimony that the conduct of the conductor was courteous, kind, and considerate. But it is unnecessary to discuss the question any further. We just simply can not get our minds to consent to the proposition that the offense of the conductor, if an offense at all, was of sufficient gravity to justify a verdict of $1,000 in damages against the railroad company. The amount of the verdict seems to us to be manifestly out of all proportion to the wrong, and we are compelled to adopt the conclusion that the jury, in assessing the amount of damages for so trivial a tort, if a tort at all, were influenced, not by the evidence, but by some extraneous fact which aroused their partiality for the plaintiff, or prejudiced them against the defendant. A mother with a babe in her arms and a child by the hand appeals powerfully to sympathy, if she does not entirely shut the eyes of justice.

We are aware of the many decisions of the Supreme Court that in cases of tort and personal injury, where the damages are unliquidated and the law furnishes no rule of measurement save the enlightened conscience of impartial jurors upon the evidence before them, a verdict will not be set aside and a new trial granted upon the ground of excessive damages, unless the amount is so unreasonable and excessive as to evince passion, prejudice, partiality, corruption, or misapprehension; and every case must stand upon its own particular facts, there being no inflexible rule that can be laid down on the subject. And while the question of damage is peculiarly one for the jury, both in the act complained of and any circumstances of aggravation, yet where the finding is so excessive as to justify an inference of undue bias, partiality, or prejudice on the part of the jury, it is the duty of the courts to interfere. This interference by the court is to be taken, not as a reflection on the jury, but only as a recognition of the well known fact that jurors in some

cases (of which the present case furnishes a type) are sometimes prone to allow their feelings to get the better of their judgment.

In our previous decision of this case we did not expressly disapprove of the verdict for $700, although, as intimated in the opinion, it went to the very limit of reasonable adjustment of the damages to the injury complained of. In the present case there is no substantial difference in the evidence, the only difference being another reason for the nervous condition of the plaintiff, independent of the altercation between her and the conductor. We feel compelled to be consistent with the view then entertained (which has been strengthened by a further consideration of the evidence), by setting aside this verdict and granting a new trial on the ground that the verdict is excessive.

There are many other special exceptions set out in the motion for a new trial. Some of them are meritorious and some are without merit; but the necessity for a decision of any of them is eliminated by the grant of another trial on the ground stated.

*Judgment reversed. Russell, J., dissents.*

POWELL, J., concurring. I know nothing of the facts or of the parties except what I gain from the record. After carefully considering the record I am forced to believe beyond any reasonable doubt that the verdict is the result of bias or prejudice, as the plaintiff showed no appreciable wrong, and I therefore concur in the opinion of the Chief Judge.