### 3989  LOUISVILLE & NASHVILLE RAILROAD CO. *et al.* v. CHIVERS.

The law requires of a carrier of passengers not only extraordinary care and diligence in conveying passengers safely to the agreed destination, but also kind, considerate, and decorous treatment of passengers by employees of the carrier while the relationship of carrier and passenger continues; and any violation of this rule, by which a passenger is humiliated or mortified, or wounded in his feelings, is tortious conduct, for which the carrier is liable in damages.

DECIDED JUNE 5, 1912.

Action for damages; from city court of Madison—Judge Anderson. January 11, 1912.

*Joseph B. & Bryan Cumming, E. W. Butler,* for plaintiffs in error.

*M. C. Few,* contra.

HILL, C. J. Miss Annie Chivers recovered a verdict against the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company for $100, as damages for the alleged tortious act of a conductor of the defendants, based upon the following facts: Plaintiff got on a train of the defendants at Buckhead, for the purpose of going to Atlanta. Before getting on the train she went to the ticket agent at Buckhead and asked him for a ticket to Atlanta, and he replied that her father had already bought her ticket to Atlanta. After the train left Buckhead, and before reaching Madison, the conductor in charge of the train took up her ticket for Atlanta. After leaving Madison the conductor approached her and asked her why she did not get off the train at Madison. She told him that her ticket was for Atlanta. He replied that her ticket was for Madison, and that she would

either have to get off the train or pay fare. "I knew my ticket was for Atlanta, having looked at it when my father gave it to me, but, as the conductor demanded fare and stated that he would put me off unless I paid it, rather than be humiliated, I paid him fare to Atlanta. I asked him to look and see if he had not taken up my ticket, for I had given it to him, and to see if it was not from Buckhead to Atlanta. He did not look, but stood me down that the ticket was only to Madison. He kept demanding that I pay the fare or get off the train. Everybody in the car saw and heard what was going on, and I saw that we were attracting attention. The car was full of people. After I had paid him the fare, the conductor approached me before we reached Atlanta, and wanted me to take back the money which I had paid him, and said he had found the ticket that I had given him, and he refunded me the money. His demand that I pay him fare was made in the ordinary tone of voice, but the passengers on the train heard him. His manner to me was respectful, and my complaint is that he demanded fare from me, first stating that my ticket read to Madison. He mortified me by stating that my ticket was to Madison and demanding that I pay my fare or he would put me off. It made the impression upon the passengers who heard the conversation that I was trying to beat my way. When he refunded me the money he apologized and stated that he had found my ticket." This is substantially the testimony upon which the verdict was based, and it was insisted by counsel for the railroad company that it is insufficient to show any liability.

The rule of law governing the case is well settled. It is unquestionably the duty of the railroad company to protect a passenger against insult or injury from the conductor of the train upon which the passenger is riding. Any conduct of the conductor which reasonably and ordinarily tends to humiliate a passenger or subject him to mortification gives to the passenger a right of action against the company. *Cole* v. *Atlanta & West Point Railroad Co.*, 102 *Ga.* 474 (31 S. E. 107), and many cases there cited. As tersely expressed in the case of *Head* v. *Georgia Pacific Ry. Co.*, 79 *Ga.* 360 (7 S. E. 217, 11 Am. St. R. 434), "Wounding a man's feelings is as much actual damage as breaking his limbs. The difference is, that one is internal and the other external, one mental, the other physical." A carrier obligates itself to carry its passengers safely

and properly, and to treat them respectfully, and if it intrusts the performance of this duty to servants, the law holds it responsible for the manner in which they execute the trust.   As stated by Judge Thompson: "The law implies, in the contract of carriage, not merely an agreement on the part · of the carrier to use the high degree of care already described [extraordinary care], to the end of conveying the passenger safely to the agreed destination, but also an agreement for kind, considerate, respectful, and decorous treatment to the passenger at the hands of the carrier's own servants."   3 Thomp. Neg. § 3185.   And as expressed by this court in *Wolfe* v. *Ga. Ry. & El. Co.,* 2 *Ga. App.* 499 ·(58 S. E. 499) : "A common carrier is· responsible for the proper treatment of its passengers, and is bound to protect them from insult as well as from physical injury."

The rule of law being thus well settled (and, we think, wisely and properly settled), the only question is, whether the conduct of the conductor in the present case amounted to a violation of this rule.   We think that the statement of the conductor that the plaintiff did not hold a ticket which entitled her to transportation to Atlanta, notwithstanding her assertion that she did have such ticket and had given it to the conductor, his refusal to examine his tickets to see if her statement was not the truth, and his assumption that it was not the truth, and his demand for fare, under the threat of putting her off the train, were calculated to humiliate and mortify her, since the conversation took place in the hearing and presence of other passengers.   It makes no substantial difference, except on the question of aggravation, that the manner of the conductor was respectful.   The conduct of the conductor, with reasonable inferences therefrom, had necessarily a tendency to embarass and humiliate the young lady passenger, and his conduct was at the peril of the company, and it turned out that his conduct was wholly unauthorized by the facts.   Neither did the fact that when he discovered his mistake he offered to refund the money, and did refund it and apologize for his mistake, repair the wrong he had already perpetrated against the passenger in wounding negligently and unnecessarily her feelings.

It is insisted that the conductor simply made a mistake.   This may be true, but it was a mistake due to his own negligence, and was a mistake for which he and his employer were responsible.

We think the verdict was fully authorized, and was conservative in amount, and that the bill of exceptions contained no merit.

*Judgment affirmed.*