9461. SOUTHERN RAILWAY COMPANY *v.* WOMACK.

In cases of personal torts, where the verdict returned is greatly dispro-
portioned to the injury proved, courts have the power to grant a new
trial on the ground of excessive damages. From the nature of such
cases no fixed rule can be established upon this subject; but when,
from the unreasonableness of the verdict, the conviction is forced upon
the mind that the rule of fair compensation has been departed from, a
new trial will be granted.

DECIDED MAY 14, 1918.

Action for damages; from city court of Floyd county—Judge Nunnally. December 7, 1917.

*Hamilton & Hamilton, C. I. Carey, Maddox, McCamy & Shu-mate,* for plaintiff in error.

*McHenry & Porter,* contra.

BROYLES, P. J. A. P. Womack brought suit against the Southern Railway Company to recover damages for an alleged tort committed by the conductor of a passenger-train in addressing to him certain "harsh, abrupt, irritating, and insulting language" in the presence and hearing of a large number of passengers, which the plaintiff alleged subjected him to great humiliation and mortifica-tion. He recovered a verdict for $750; and the defendant ex-cepted to the judgment overruling its motion for a new trial. One of the special grounds of that motion was that the amount of the verdict was so excessively large as to justify the conclusion that it was the result of bias and prejudice on the part of the jury.

The evidence for the defendant demanded a verdict in its favor. The evidence for the plaintiff made the following case: On Christmas day, 1916, the plaintiff, in company with four friends, three of them being ladies, boarded a passenger-train of the defendant company at Lindale, Georgia. The defendant had all the tickets

for the party, and was the last to enter the coach. One of the ladies and the other men in the party turned one of the seats, so that all five of them could sit facing each other. The plaintiff sat down on the seat that had been turned, and was riding backwards. The train was well loaded and there were many ladies and men in the car. When the conductor came up to the party the plaintiff handed him the tickets, and while punching them the conductor said to the plaintiff, " 'What did you turn that seat that way for?' in just as short a manner as he could." The plaintiff replied: "It was turned to suit our convenience; that's what they done it for; so we could sit here and talk." The conductor said: "If you have any authority to turn that seat that way, show it; and if not, you get up and fix it just like the balance of these seats." The plaintiff replied: "I have been accustomed to riding on trains and cars all my life, and seeing seats turned this way; and you are the first to object." The conductor replied: "It don't make any difference what you think about it; you get up from there and turn that seat back like it was, or get off this train." The plaintiff swore that the conductor's tone "was harsh; there were ladies in the car, and two of the ladies were on that seat with me; everybody looked around at me; and I got up and turned the seat because I did not want to have any trouble. . . I had not done or said anything to the conductor to irritate him or cause him to talk to me that way or in that manner. . . He never opened his mouth about rules, . . never told me it was a rule of the company that the seat could not be turned back that way; just told me that I had to turn it back like it was. . . If the seat had not been turned, it could not have accommodated any more passengers. . . Five of us occupied the two seats. . . When I raised up and turned the seat back I looked around and saw several passengers looking at me. They could hear him talking all over the car. . . I would not violate a rule if I know'd it. . . If the ladies had not been there I would not have turned the seat back. . . I turned it back and he went on. . . I am thirty-four years old. . . That's the whole transaction." It was undisputed in the evidence that one of the rules of the defendant company required that all the seats in its passenger-cars should be turned in the same direction, so that all the passengers should have their faces towards the engine.

In our opinion this evidence does not warrant a verdict for $750 as damages. In *Georgia Southern & Florida Railway Co.* v. *Ransom,* 8 *Ga. App.* 277 (68 S. E. 943), a verdict for $1,000 was held by this court to be excessive. In our judgment the verdict for $750 in the instant case is more disproportionate to the wrong suffered than was the verdict in the *Ransom* case. In this case, as was said by Chief Judge Hill in that case, "The amount of the verdict seems to us to be manifestly out of all proportion to the wrong, and we are compelled to adopt the conclusion that the jury, in assessing the amount of damages for so trivial a tort, if a tort at all, were influenced, not by the evidence, but by some extraneous fact which aroused their partiality for the plaintiff, or prejudiced them against the defendant. . . We are aware of the many decisions of the Supreme Court that in cases of tort and personal injury, where the damages are unliquidated and the law furnishes no rule of measurement save the enlightened conscience of impartial jurors upon the evidence before them, a verdict will not be set aside and a new trial granted upon the ground of excessive damages, unless the amount is so unreasonable and excessive as to evince passion, prejudice, partiality, corruption, or misapprehension; and every case must stand upon its own particular facts, there being no inflexible rule that can be laid down on the subject. And while the question of damage is peculiarly one for the jury, both in the act complained of and any circumstances of aggravation, yet where the finding is so excessive as to justify an inference of undue bias, partiality, or prejudice on the part of the jury, it is the duty of the court to interfere. This interference by the court is to be taken, not as a reflection on the jury, but only as a recognition of the well known fact that jurors in some cases (of which the present case furnishes a type) are sometimes prone to allow their feelings to get the better of their judgment."

Under the above ruling it is unnecessary to consider the other assignments of error.

*Judgment reversed. Bloodworth and Harwell, JJ., concur.*