49684. HENDERSON v. ATLANTA TRANSIT SYSTEM, INC.

PANNELL, Presiding Judge.

H. L. Henderson brought a complaint against the Atlanta Transit System, Inc., seeking recovery of general and punitive damages against defendant based on alleged conduct of a bus driver of defendant who allegedly "committed tortious misconduct against plaintiff as specified in plaintiff's letter to defendant" of a certain date and that "plaintiff was subjected to opprobrious, insulting and abusive words by said bus operator employed by the defendant which humiliated, mortified and wounded the feelings of the plaintiff. Such words were calculated to charge the plaintiff with employing sinister practices to avoid paying the proper fares for the

transportation involved and sought, whereas, the transfer privilege which was sought having been exercised by the plaintiff upon numerous occasions before and after the said incident. . ." The material parts of the letter, attached to the complaint by amendment, read as follows:

"Yesterday morning I was out on North Highland Avenue, N. E. without the use of an operable automobile and boarded a bus on the Noble line for return to my residence; I paid my fare and the transfer fee and was issued a transfer with the expiration time of 12:40 p.m. shown. At approximately 12:30 p.m. at the corner of Peachtree and Ellis Streets I boarded your bus numbered 829 bearing the 'Oglethorpe via West Peachtree' designation and tendered my transfer from the Noble line and followed my long-time practice of advising the operator that I would transfer to the Ridgewood-West Wesley feeder at Peachtree Battle Avenue and would want a transfer upon my leaving the vehicle at the indicated transfer point. The operator advised me that the feeder bus was not then operating and would not resume operation until after he would have gone off duty; that he would not issue me a transfer and that I could take back the Noble line transfer I had given him and use it later on a bus out of Peachtree Battle Avenue; whereupon, I pointed out that the Noble transfer would expire within a few minutes and showed him a printed schedule for the feeder line and advised him of my long-time familiarity with the procedure of transfer to the feeder; I showed him that the first feeder was scheduled to depart from the E. Rivers School at 2:35 p.m., and that I would take it after a layover at Peachtree Battle as I had done numerous times in the past.

"He very adamantly again stated that he would not issue me a transfer upon my getting off at Peachtree Battle Avenue, and in answer to my inquiry as to how I could employ the feeder to get over to Moores Mill Road he snapped that I would have to pay another fare on the feeder; that I had exhausted my transfer privileges. Finding that I could not reason with him and that his name was not posted above his seat I asked him for his name in order that I might report his abrupt departure

from the long-time experience I had had in the particulars, and he said I did not need his name but could report that it was on bus number 829. After I had sat down at the head of the lengthwise seat opposite his seat he called out to me loudly that he did not want any argument of any kind and I could report whatever I wanted to; I had ceased conversation with him when he made the exclamation and was making entries in a pocket diary regarding the incident."

In a request for admissions served by the plaintiff upon the defendant, it was admitted that generally passengers are entitled to transfers to another route and that plaintiff did not receive the transfer requested on the occasion in question. A motion for summary judgment on all issues in the case was made by the defendant and sustained by the trial judge. *Held:*

1. To entitle the defendant to a summary judgment the undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and *under every theory fairly drawn from the pleadings and evidence (Werbin & Tenenbaum v. Heard,* 121 Ga. App. 147 (2, 3) (173 SE2d 114); *Scales v. Peevy,* 103 Ga. App. 42, 46, (118 SE2d 193); *Calhoun v. Eaves,* 114 Ga. App. 756, 759 (152 SE2d 805); *Saunders v. Vickers,* 116 Ga. App. 733, 734 (2) (158 SE2d 324); *Central of Ga. R. Co. v. Woolfolk Chemical Works,* 122 Ga. App. 789 (178 SE2d 710); *Columbia Drug Co. v. Cook,* 127 Ga. App. 190 (194 SE2d 286); *Turner v. Noe,* 127 Ga. App. 870 (195 SE2d 463); *Morrow v. Thomason,* 127 Ga. App. 309 (193 SE2d 256)) and if necessary, prove the negative or nonexistence of an essential element affirmatively asserted by the plaintiff. *Kroger Co. v. Cobb,* 125 Ga. App. 310, 312 (4) (187 SE2d 616); *Werbin & Tenenbaum v. Heard,* 121 Ga. App. 147 (2), supra. And until movant has made a prima facie showing by evidence which demands a finding in his favor as to the particular matter, there is no duty upon the opposing party to produce rebuttal evidence. *Anderson v. Redwal Music Co.,* 122 Ga. App. 247 (176 SE2d 645); *Watkins Products v. England,* 123 Ga. App. 179 (180 SE2d 265).

2. Whether or not it was necessary that the words of the bus driver must be slanderous in order for the

plaintiff to have a recovery because of the language used by the bus driver (see, *Cole v. Atlanta & West Point R. Co.,* 102 Ga. 474 (31 SE 107); *Wolfe v. Georgia R. & Elec. Co.,* 2 Ga. App. 499 (58 SE 899); *Zayre of Atlanta v. Sharpton,* 110 Ga. App. 587 (139 SE2d 339)) we do not decide. Should we assume that no slander was committed and that slander was a necessary element to recovery because of the spoken words, this would not authorize the grant of a summary judgment for the defendant in the present case; this for the reason that there was pleading and evidence relating to the question of whether the refusal of the bus driver to give the plaintiff a transfer was wrongful. See *Georgia R. & Elec. Co. v. Baker,* 125 Ga. 562, 563 (4) (54 SE 639). The movant failed completely in producing evidence on this subject other than its admissions, and failed to pierce the pleadings and the issues made by the evidence. "It is the obligation of movant for summary judgment to show positively the truth of matters which are essential to a judgment in its behalf, and this it does not do." *Watkins Products v. England,* 123 Ga. App. 179, 182 (180 SE2d 265).

3. We accordingly, must hold that the trial judge erred in granting the defendant's motion for summary judgment.

*Judgment reversed. Webb, J., concurs. Evans, J., concurs specially.*

ARGUED SEPTEMBER 4, 1974 — DECIDED NOVEMBER 18, 1974.

*Henry M. Henderson,* for appellant.
*Hansell, Post, Brandon & Dorsey, W. Lyman Dillon, Michael B. Carroll,* for appellee.

EVANS, Judge, concurring specially.

In this case plaintiff sued Atlanta Transit System, Inc. for damages because of opprobrious, insulting and abusive words spoken to him by the bus driver, which humiliated, mortified and wounded plaintiff's feelings.

The trial court granted defendant's motion for summary judgment and the majority opinion reverses and returns the case for trial by jury.

The defendant contended that unless the spoken words were slanderous no recovery could be had by plaintiff. The majority opinion skirts this issue and fails to decide it, and places its reversal on the ground that a jury issue was formed on the question of whether the refusal of the bus driver to give plaintiff a transfer was wrongful. I concur fully in the majority opinion as far as it goes, but I feel that it should go much further.

It was not necessary for plaintiff to allege and prove the spoken words were *slanderous* in order to recover. Code § 18-204 imposes upon a carrier of passengers the duty of exercising *extraordinary diligence* to protect the lives and persons of his passengers.

Our appellate courts of Georgia have held repeatedly that this statute includes the duty of protecting the passenger against insult.

In *Hames v. Old South Lines,* 52 Ga. App. 420 (183 SE 503), it is held that: "A common carrier of passengers is bound to exercise extraordinary diligence to prevent *insult,* injury, or harm to a passenger transported by it." citing Code § 18-204. (Emphasis supplied.)

In *Wolfe v. Ga. R. & Elec. Co.,* 2 Ga. App. 499, 500 (3b) (58 SE 899), it is held: "An insult does not necessarily consist in the use of language imputing a crime. It more generally consists in the use of language affecting the social status and personal feelings or the business relations of the person insulted." In the *Wolfe* case, supra, the lower court was reversed and the use of insulting language, which did not amount to slander, was held to be actionable, and at p. 502 it is held that the common carrier of passengers has a duty to protect its passengers from insult by other passengers and by the company's agents, and then uses this language: "A carrier is as much bound to protect and shield from attack the passenger's feelings as his person, and if it subjects him to the pain and humiliation of being insulted or abused, it is liable for this negligent omission. . ."

In *Southeastern Greyhound v. Graham,* 69 Ga. App. 621, 624 (26 SE2d 371), it is held: "The unprovoked use of opprobrious words and abusive language by a conductor of a common carrier (or driver of the bus of a common carrier) tending to humiliate the passenger or

subject him to shame and mortification, gives the passenger a right of action." For other cases of similar import, see: *Ga. So. & Fla. R. Co. v. Ransom,* 8 Ga. App. 277 (68 SE 943); *L. & N. R. Co. v. Chivers,* 11 Ga. App. 236 (75 SE 13); *Southern R. Co. v. Huckaba,* 14 Ga. App. 311 (80 SE 697); *Atlanta & West Point R. v. Condor,* 75 Ga. 51 (2); *Richmond & D. R. Co. v. Jefferson,* 89 Ga. 554, 557 (16 SE 69).

The manner in which the bus driver speaks the words to the passenger may be just as offensive as the actual meaning of the words. If the bus driver speaks in obvious anger, or if he shouts into the face of the passenger, this could amount to insult and be opprobrious, though the words themselves are not slanderous.

I, therefore, respectfully assert that the passenger in this case was entitled to have a jury pass upon the question of whether the words *or conduct* of the bus driver were such as to humiliate, mortify, or embarass, or wound the feelings of such passenger; and whether the passenger had done anything to justify the words or conduct of the driver.