ALONZO T. MITCHELL *v.* SOUTHERN RAILWAY COMPANY.

1. RAILROADS. *Passengers. Contract. Expiration of ticket. Ejection.*

A passenger who tenders a ticket over a route including several connecting carriers, which shows upon its face the exact date of its expiration, giving ample time to make the journey, can be rightfully ejected from the cars after the expiration of his ticket, on refusal to pay his fare.

2. SAME. *Casualty. Incapacity of carrier.*

But if the passenger start upon his journey in time to make his trip before the expiration of his ticket, and is delayed by any casualty to, or incapacity of the carrier, he should not be ejected.

3. SAME. *Pleading.*

A declaration against a railroad company for the ejection of a passenger from a train, which shows that the ejection itself was not wrongful, cannot withstand a demurrer because of an averment of the pleader's conclusion that the ejection was made with indignity, etc., the facts not being stated.

4. SAME. *Return passage. Identification.*

    If a ticket provide for the identification of the passenger before beginning a return trip, and the agent whose duty it was to identify wrongfully refuse identification and the proper stamping of the ticket until it is too late to make the journey within the life of the ticket, the passenger can recover what he may have had to pay to return with timely departure, and other damages, if the refusal was accompanied with insult. etc.; but such a case must be appropriately pleaded.

5. SAME. *Explanations to conductors.*

    A railroad conductor is not required to accept the uncorroborated statement of a person upon his train claiming to ride upon a defective, expired or lost ticket. *Kansas City, etc., Railroad Co.* v. *Riley,* 68 Miss., 765, and *Alabama, etc., Railway Co.* v. *Holmes,* 75 Miss., 371, approved, but each limited to its special facts.

FROM the circuit court of Warren county.

HON. WILLIAM K. McLAURIN, Judge.

Mitchell, the appellant, was the plaintiff, and the railway company, appellee, was defendant, in the court below. The opinion of the court states the facts.

*Dabney & McCabe,* for appellant.

We make three contentions:

First: That by the terms of the ticket, the plaintiff having taken passage on his return trip before the expiration of the ticket, he was entitled to run through continuously within three days, although he could not reach his destination within the limits of the time specified, namely, the 4th of October; that having started on his return trip, it was a sufficient compliance with the terms of the ticket.

Secondly: That the ticket, with its punch marks, providing for a continuous passage within three days from the time when the plaintiff should start from Washington, which he could do at any time after arriving there and by the 4th of October, constituted the contract between the parties, and it was necessary, in order to carry out that contract by both parties, that it should be made possible by all the roads for the plaintiff to execute the

contract by making a continuous trip within the time specified, and until all of the roads constituting the chain, or line, were in operation and ready to transport the plaintiff according to the terms of the contract, he was under no obligation to begin his return trip.

Thirdly: That the agent in Washington having refused to certify the identification on Saturday, October 2, the ticket would be good for at least two days after being certified on October 4.

Upon the first proposition we cite *Lundy* v. *Railway Co.,* 66 Cal., 191, s.c. 56 Am. Rep., 100, and *Georgia, etc., R. R. Co.* v. *Bigelow,* 68 Ga., 219.

On the second one, *Auterbach* v. *New York, etc., R. R. Co.,* 89 N. Y., 281, s.c. 42 Am. Rep., 290.

On our third proposition we have to say that the refusal of the agent in Washington to receive and certify plaintiff's identification on Saturday, October 2, according to our view of the law, was right, because it bound the several companies to bring plaintiff back in three days from that time. As he knew that two of the roads were not in operation, we think he did right to decline to start plaintiff on a trip which could not be completed under the contract If our second position is right, this is true; otherwise, the agent was wrong in refusing to certify, etc., and made the defendant liable by his refusal.

Finally, the entire facts were explained to the conductor, and this brings the case within the rule announced by this court in *Kansas City, etc., R. R. Co.* v. *Riley,* 68 Miss., 765; *Alabama, etc., Ry. Co.* v. *Drummond,* 73 Miss., 819; *Alabama, etc. Ry. Co.* v. *Holmes,* 75 Miss., 389.

*LeRoy Percy,* for the appellee.

There can be no question about the right of railroad companies to affix reasonable terms to the sale of tickets made on reduced rates, and the purchaser, in consideration of such reduced rates, having agreed to accept the ticket with the condi-

tions contained in it, is bound by such conditions, and can only use the ticket according to the terms of the contract. It does not seem that a proposition so universally upheld needs a citation of authorities to support it, but I cite the following authorities among many as bearing out this proposition: *Howard* v. *Chicago, etc., R. R. Co.*, 61 Miss., 194; *Wilson* v. *New Orleans, etc., R. R. Co.*, 63 Miss., 352; *Illinois, etc., R. R. Co.* v. *Marlett*, 75 Miss., 956; *Pennington* v. *Philadelphia, etc., R. R. Co.*, 18 Am. & Eng. Railroad Cases, 310.

According to the unequivocal language of the contract embodied in the ticket sold to appellant, the ticket was not to be good after midnight of the last day allowed for the return passage, " and in no event later than the date canceled in the margin of the face hereof under the head of 'Return passage,'" the date so canceled being October 4. In other words, the life of the ticket, according to the terms of the contract, expired at midnight of October 4. It was valid up to that date and could be used until that time; but whether appellant had used any portion of it, or whether he had not started on his return trip prior to that time, such portion of it as was unused was dead—the vitality of the ticket had expired. *Lake Shore, etc., R. R. Co.* v. *Pierce*, 3 Am. & Eng. Railroad Cases, 340; *Yorton* v. *Milwaukee, etc., R. R. Co.*, 6 *Ib.*, 322; *Frederick* v. *Railroad Co.*, 37 Mich., 342; *Mosher* v. *Railroad Co.*, 127 U. S., 390; *Boylan* v. *Railroad Co.*, 132 U. S., 146; *Everett* v. *Railroad Co.*, 69 Iowa, 15.

Calhoon, J., delivered the opinion of the court.

The declaration in this case is for damages against the railway company, and has two counts, and it was demurred to and the demurrer was sustained, and Mitchell, the plaintiff, appeals.

In his first count he charges that on September 4, 1897, he bought in Vicksburg, Miss., a ticket for passage to, and return from, Washington City. He bought it from the Alabama & Vicksburg Railway Co., which was acting in the sale for itself

and as agent for the appellee and divers other connecting lines between Vicksburg and Washington City.

This ticket provided that, before commencing his return from Washington City, Mitchell should be identified there before the authorized agent of the Baltimore & Ohio Railroad Company, who should stamp and date the identification.

Then follows the fourth clause of the contract part of the ticket, which is in these words:

" The punch mark in the margin of the face under the head of ' Return Transit Limit' indicates the number of days which will be allowed to said purchaser from the date of said identification in which to return to the point at which this ticket is sold. This ticket shall not be good for return passage after midnight of the last day so allowed, and in no event later than the date canceled in the margin of the face hereof under the head of ' Return Passage.' "

The date so canceled is October 4, 1897, and the number of days allowed to complete the return journey to Vicksburg after identification is indicated by the punch mark to be three.

The first count then states the case to be that Mr. Mitchell was identified by the proper agent in Washington on October 4, 1897, and on that day he commenced his return transit toward Vicksburg, and his case is based on the claim that he had three days in which to return to Vicksburg from the date of identification, although he procured the identification on a day which made it impossible for him to complete his return journey to Vicksburg by midnight of October 4.

This count then proceeds to aver that on the next day, October 5, 1897, being at Johnson City on his way back, he was " wrongfully ejected " from its car by appellee's conductor " in the presence of many passengers, with great indignity and wrong and hardship," etc.

It will be seen that the gravamen of this count is the predicate that the plaintiff was entitled to travel on his ticket after mid-

night of October 4, 1897, because he commenced to travel on it on that day, it being the day he was identified in Washington.

We cannot approve this view. It was not the contract he made at Vicksburg. By that contract he had three days from the purchase for his trip to Washington, and no more, and three days for his return to Vicksburg from the date of identification, and no more. By that contract his ticket was dead at midnight of October 4, regardless of the date of identification. By it, whensoever he procured his identification, although he may have had even ten or twenty days to spare of the thirty between September 4, the day of purchase, and midnight of October 4, the day of expiration, he could not stop to prevent it, but must make his return trip within the three days' limit. After midnight of October 4 he had no right, by virtue of that ticket, on any train of any of the connecting lines, and might be properly ejected from any by the conductor.

All the sound reasoning and the great mass of authorities favor this view. The cases are cited in the very exhaustive and able briefs of the counsel on either side. In fact, those two or three cited by the learned counsel for appellant, when carefully scrutinized, are not in conflict with our conclusion.

In *Lundy* v. *Central Pacific R. R. Co.*, 66 Cal., 191, the ticket read " not to be good for passage " after nine days from sale, and we are not prepared to say the court was wrong in holding plaintiff entitled if he took passage before the nine days expired. We make the same observations as to *Auerbach* v. *N. Y., etc., R. R. Co.*, 89 N. Y., in which case the ticket recited that it was " good for one continuous passage," but not to be " used " before September 26; and the court properly, perhaps, held the holder entitled if he began its use before September 26. We make the same observation as to *Ga. So. R. R. Co.* v. *Bigelow*, 68 Ga., 223, where the ticket read: " Rome and return, if used within two days from the date sold." In all these cases it may well be said that the company's reservation must be taken most strongly against it, and it should have clearly fixed the precise

limitation of use or passage. In the case at bar it is precisely fixed and we cannot make contracts for the parties. There can be no question of the meaning of this ticket. Its very terms prescribe that " in no event " shall it be good after midnight of October 4.

All that has been said is, of course, subject to the modification that, if the purchaser started in time to make his passage within the three days, he should not suffer if any casualty or incapacity of any of the connecting lines made the journey impracticable within the limit.

As to so much of the first count as charges that the ejection was made with indignity, etc., and as to so much of the second count as charges brusqueness, wrong, harshness, injustice, etc., we suppose they are not really depended on. If they are, the dependence falls, because they charge conclusions only, and do not give facts from which the conclusions are drawn of which the court may judge.

The demurrer was properly sustained as to the first count.

The second count adds to the first the averments that, two days before the expiration of the limit, and in time to reach Vicksburg within the period, plaintiff applied for identification to the proper agent, who " recommended and advised " him not to be then identified, because he could not get home on the route within the three days, since, on account of yellow fever, some of the connecting lines could not operate, and " refused and declined " to stamp his identification, and said that his limit would be extended " upon application," such extension being then a universal practice on that system. This was on Saturday, October 2. On October 4 he applied for extension, and was " brusquely, wrongfully, harshly and unjustly refused." Still he then had himself identified and started and was ejected as set forth in the first count, although he communicated the facts to the conductor; and the count concludes that the conductor "so ejected this plaintiff, doing him the great wrong and injustice aforesaid, to his damage," etc.

By all rules of construction of pleadings this count is based on the ejection from the train, and not on any refusal to identify. The latter seems to be brought in merely in recital of the history of the case. At any rate, the plaintiff claims no damage because of it. An action based on that, and sustained by proof, would entitle him to damages to cover what he may have had to expend to get home by another route with timely departure, and to other damages if the refusal was accompanied by insult appropriately pleaded.

We consider now, therefore, the ejection, presuming, as we must, that plaintiff was properly and politely ejected. The case, in this aspect, in effect, is this: Plaintiff produced his ticket, which showed itself to be void, and told the conductor that he had applied to the agent on October 2 for identification, and was told by the agent he had better not then identify, as some of the connecting lines could not operate because of yellow fever, and that he could readily get an extension of time, and that the agent then refused identification, and that, on October 4, he applied for extension and was refused, and that then he obtained identification and started home, and, notwithstanding this statement, the conductor put him off the train.

This states no cause of action on the ejection. Plaintiff relied on extension of time at his own peril. He knew there was nothing in his contract binding the carrier to extend, and that any extension would be a mere gratuity. He should have insisted on identification, and could have sued if refused.

On the question of his right to sue for the ejection, we are clearly of the opinion that it does not exist. To hold that it does involves the logical conclusion that a conductor must accept any oral statement of a passenger, even merely that he had lost his ticket, thus putting railroad companies at the mercy of every tramp, and thus putting conductors to the alternative of accepting as true all statements or subjecting their companies to an action for damages.

The Riley case, in 68 Miss., and the Holmes case, in 76 Miss., have carried the doctrine as far as it can be pressed without crossing the danger line of injustice to railroad corporations. We approve both of those cases because, in each of them, the passenger had, and exhibited to the conductor, evidences showing reasonably the statement to be true. Here there is nothing to support the oral statement but the mere production of a ticket absolutely void on its own face.

The demurrer was properly sustained as to the second count.

*Affirmed.*