De Witt Mullins *v.* Illinois Central Railroad Company.

[46 South., 529.]

1. **Railroads.** *Carriers. Trespasser. Ejection. Refusing to pay fare. Crippled boy. Kindly passenger's offer.*

 Where a ten-year-old crippled boy boarded a train without a ticket, intending not to pay fare, and was ejected, he cannot predicate a right of action of the fact that a kindly disposed passenger, after the train had been slowed down and practically stopped for the ejection, offered to pay his fare from the point at which he boarded the train to his destination.

2. **Same.** *Forfeiture of right to carriage.*

 A person who enters a railroad train, without a ticket, forfeits all right to passage thereon by refusing to pay fare and permitting the train to be slowed down for his ejection.

From the circuit court of Copiah county.

Hon. Robert L. Bullard, Judge.

Mullins, an infant, suing by his father as next friend, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment, predicated of a peremptory instruction, in defendant's favor, paintiff appealed to the supreme court.

The opinion of the court states the facts.

*W. R. Harper,* for appellant.

We find no fault with the general rule, upon which the court below seems to have acted, that where a passenger wilfully

boards a train with the intent of beating his way, it is too late, after the train has stopped and the passenger is about to be ejected, for him or some one for him to tender the fare. But the case at bar presents no such question. Here was a little ten-year-old boy, incapable of such intent; or, at least, whose capability of intent should have been determined by the jury. Manifestly he had no purpose to defraud the railroad company, since, previously, through the kindness of conductors, he had often ridden without charge upon the trains of the company, and merely hoped to be able to do so again. This exception we contend for is fully established by the authorities. See *Railroad Co.* v. *Garrett,* 8 Lea (Tenn.,) 439, citing *Weaver* v. *Rush,* 8 Term. Rep., 78, 4 Denio, 448; *Deane* v. *Taunton,* 7 Taunt., 489.

This is a case of a crippled child of tender years, incapable of a wilful and corrupt intention to defraud, having his fare tendered for him by the kindness of a friend, while the conductor wilfully refused to receive the fare and ejected the helpless infant merely to "teach others a lesson," according to the testimony. The action of the conductor was of such an arbitrary and unlawful nature as to warrant a verdict against the railroad company. At all events, the question should have been left to the jury.

*Mayes & Longstreet* and *J. M. Dickinson,* for appellee.

It is true that the law provides that, in some cases, the companions or attendants of a passenger may tender fare for him where he cannot pay for himself, and where he is without fault and has made an honest mistake in boarding the train under the idea that he had sufficient funds to pay his fare. Such is the case cited by appellant. But the case at bar is entirely different. Here, a precocious youth, experienced in railroad travel, purposely and wilfully entered the train at Brookhaven, without money or ticket, with the express purpose of riding to Hazlehurst without paying fare, if possible. He knew that the law required him to pay the proper fare, and his act was a deliberate

attempt to impose upon the railroad company. The conductor did not treat him in any way rudely, when he expressed his inability to pay the fare, but, on the other hand, instead of stopping the train at once, carried him on to the town of Wesson and there stopped the train, and the flagman of the company, with due consideration that the boy was a cripple, assisted him to alight. Where is there any fault on the part of the railroad company?

While there are some cases holding that under peculiar circumstances a third person, as volunteer, may tender fare for the delinquent passenger and that it will be the duty of the conductor in such case to accept it, the best reasoning is that found in the case of *Railroad Co.* v. *Asmore,* 16 L. R. A., 52, where it is held that the determinative factor in the case will be the source of the fault or neglect out of which the failure to pay fare, and the consequent ejection from the train, grew. See also *Hoffbauer* v. *Railroad Co.,* 52 Ia. 348, 3 5Am. Rep., 278; *Railroad Co.,* v. *Dwelle,* 44 Kas., 394; *Hibbard* v. *Railroad Co.,* 15 N. Y., 455; *Pease* v. *Railroad Co.,* 11 Daly, 350; *Picken* v. *Railroad Co.,* 104 N. C., 312; *Skillman* v. *Railroad Co.,* 39 Ohio St. Rep., 444; *Railroad Co.* v. *Turner,* 83 Am.

The state of New York seems to be the only state which asserts that a tender by any third person before the train has stopped, will entitle the passenger to remain on the train; but the decisions of that state on the point show a total disregard of the underlying principle which controls in such cases, and which are well emphasized in the decisions above cited.

CALHOON, J., delivered the opinion of the court.

The appellant is a crippled boy, who got on the train with his suit case and no money to go from Brookhaven to his home at Hazlehurst, a few stations away. When called on for his fare he answered that he had no ticket nor money to pay his fare, and was told he would have to pay his fare or get off. Accordingly the conductor, with proper consideration for the

boy, took him as far as the town of Wesson, which town was not a stopping place for that train. The conductor and the boy went to the front door of the coach, and the flagman was there to assist the boy in getting off. There was no pretense of rudeness on the part of the railroad operatives. When the train was nearly at a stop a gentleman passenger, out of benevolence, offered to pay the fare of the boy to Hazlehurst, to which point he was destined. The conductor told the gentleman that it was too late to pay after he had brought the train to a stop, and so he put the boy off.

At Wesson the boy stopped at the house of his uncle and had no trouble or inconvenience. In short, do damage whatever was shown. Wesson was within a few miles of his home, and there was a very short, and no doubt pleasant, delay in getting to his home. He had boarded the train with design not to pay fare. The very great weight of authority is against recovery in such a case as this, and we think the conclusion of the court below was a wise one. If a different rule were established, the operation of railroad trains, so essential to the welfare and convenience of the people, could be made a mere plaything of recalcitrant or mischievous passengers. On the declension of payment of fare and the stopping of the train, any contract, or any right to a contract, for that passage, was forfeited.

This we regard as the true rule, and the judgment is *affirmed.*