## GULF, M. & N. R. Co. v. MASON.

(Division B.   Oct. 28, 1935.)

[163 So. 825.   No. 31872.]

Flowers, Brown & Hester, of Jackson, for appellant.

C. E. Gibson, of Monticello, for appellee.

Ethridge, P. J., delivered the opinion of the court.

Lizzie Mason, plaintiff in the court below, brought suit in the circuit court of Lawrence county for damages alleged to have been sustained by her by reason of being ejected from one of the passenger trains of the company. The declaration and proof show that she purchased a

ticket from Monticello, in Lawrence county, Mississippi, to New Orleans, in the state of Louisiana, and boarded the train at Monticello, Mississippi. When the conductor came through to collect the fares, the plaintiff was unable to produce her ticket, although she, in fact, had purchased a ticket and had it in her possession wrapped in a piece of paper, and had forgotten doing so. She looked through her purse, and, being unable to find it and not having the money to pay the fare in cash, she was ejected from the train.

She testified, on direct examination, that she was not able to hand the conductor the ticket because she failed to find it, that she had purchased a ticket, and she told the conductor she had bought it, and she began to search through the papers and handkerchief in her pocketbook for it.

"Q. What did he tell you when you didn't hand him the ticket? A. He told me he would have to put me off, and I asked him couldn't he take me to the station that Mr. Poole knew I bought the ticket and I told him nobody else bought a ticket there but me, and I asked if he could back up there, and he said 'no,' that he was already behind time, and that he would have to put me off.

"Q. What did you say to him then? A. I didn't say nothing, I didn't know what to say.

"Q. How far had you gone before he put you off? A. It was a mile or more in my estimation."

On cross-examination she testified as follows:

"Q. And when the conductor came around to take up your ticket you couldn't find it, and you never did find the ticket until after you got off the train, did you? A. That's right.

"Q. You never did show the conductor of that train a ticket, did you? A. No sir, I didn't stay on there long enough.

"Q. You didn't stay on the train very long? A. No sir, it wasn't very long."

On redirect examination, she testified as follows:

"Q. Did you tell the conductor you had your ticket and if he would give you time—(Objected to; sustained.)

"Q. State what you told the conductor with reference to the ticket? A. I told him I would try to find it if he would give me time.

"Q. And what did he tell you? A. He told me to hurry up that he was behind time. He said, 'If you can't find it I will stop the train and put you off.'

"Q. And they put the baggage off and told you to get off? A. Yes sir, he called the porter and he put it off."

The plaintiff introduced Oris Peyton, colored, as a witness. Peyton was near the place where the plaintiff was put off the train, and he testified that she asked him to mind her baggage while she went home to send some one for it, and he did so, that he did not see her look for the ticket after she got off the train, and she told him she had bought a ticket, but he did not see her look for it. He also testified as to the weather saying that it was a little foggy but not raining.

The conductor in charge of the train testified as follows:

"Q. When the train got ready to pull out and did pull out, what did you do? . . . A. I immediately went to her (Lizzie Mason). She was sitting about the third or fourth seat on the right hand side as I faced the rear of the train, and she began searching for her ticket. In fact, she took out, apparently, everything she had in her purse and dumped it out in her lap, and she couldn't find any ticket, and I said, 'I don't believe you've got one,' and she said 'I remember, I left it in the depot,' and I said, 'Where are you going,' and she said 'New Orleans,' and I said 'Well, have you got any money to pay your fare,' and she held up about fifteen cents, I know it was not over twenty cents, and said that's all she had, and I said, 'The best thing is for me to stop the train and

let you get off before we get out of town,' and thereupon I pulled the whistle cord and stopped the train.

"Q. You say she took everything, apparently, in her purse out in her lap? A. Yes sir.

"Q. And did she give you a ticket? A. No sir she told me she left it in the depot.

"Q. Where? A. Maybe she said in the waiting room or something like that. I don't remember the exact words, but the language she used was that she'd left it in the station where she bought it in Monticello."

The colored porter on the train who was with the conductor testified, in substance, as did the conductor, but also stated that the plaintiff consented to get off the train.

The plaintiff, when recalled, denied the statement alleged to have been made by her that she left the ticket in the depot or station.

The railroad company requested a peremptory instruction, which was refused, and the case was submitted to the jury, which returned a verdict for the plaintiff in the sum of one hundred dollars, from which this appeal is prosecuted.

It must be remembered that the journey undertaken was an interstate journey, and, under the federal law regulating interstate transportation, 32 Stat. 847, chap. 708, sec. 1, as amended by the Act of June 29, 1906, 34 Stat. 587, chap. 3591, sec. 2 (49 U. S. C. A., sec. 41), the railroad would have been subject to a penalty for carrying a passenger without a ticket or without the means to pay a cash fare. It was the duty of the plaintiff, in this case, to have produced a ticket and the conductor was not under any obligation to carry this passenger on a journey without a ticket or paying a cash fare. He was not obliged to take her statement that she had purchased a ticket, as he would have no means of knowing whether she had or not. In the case of Louisville & N. R. Co. v. Mason, 4 Ala. App. 353, 58 So. 963, the Court of Appeals of Alabama held that the fact that the ap-

pellee purchased a ticket was not notice to the conductor that he was in possession of the ticket, and it did not relieve him of the legal duty of producing the ticket when called upon by the conductor for his fare. The passenger was under the duty of keeping the ticket where it could be readily found or found within a reasonable time, and, if the passenger is not so able to produce a ticket, the conductor is authorized, and should, under the federal law, eject the passenger.

In the case of Illinois Cent. R. Co. v. Holman, 106 Miss. 449, 64 So. 7, 8, Holman undertook to make a journey from Grenada, Mississippi, to Memphis, Tennessee, on a mileage book limited to intrastate transportation in the state of Mississippi only. He got on the train at Grenada, and had the conductor pull his mileage book to Sardis, Mississippi, where he got off the train and bought a ticket from Sardis to Memphis. The conductor refused to accept this ticket unless Holman would pay his fare from Grenada to Sardis, because the mileage book provided that it would not be good for any part of an interstate trip. Holman refused to do this and the conductor had him ejected from the train. He recovered a judgment against the railroad company in the circuit court, which was reversed in this court, the court saying that "Mr. Holman was an interstate passenger. He boarded the train at Grenada to go to Memphis—his destination was outside this state. The provisions of the act of Congress cannot be nullified by evasion, or subterfuge, nor could the railroad company escape the penalties for its violation by shutting its eyes to the fact that Mr. Holman was attempting to pay a part of his fare from Grenada to Memphis, with mileage issued for advertising and not paid for in cash. The mere stepping off the train at Sardis did not change the passenger from an interstate passenger to an intrastate passenger. His status was fixed when he boarded the train at Grenada, and no part of his transportation could be paid except in money at the regular tariff rates. This certainly is the contract between

the railroad company and appellee, and the contract is but a declaration of the federal statute. . . . The act of Congress was adopted for the purpose of putting everybody upon equal terms, and to destroy the pernicious practice of discrimination.''

In the case of Mitchell v. Southern Ry. Co., 77 Miss. 917, 27 So. 834, the plaintiff was ejected on the ground that the return ticket which he tendered the conductor had not been stamped for identification as required by its terms, nor had it been extended. The possession of the ticket showing that it had expired was held not to impose on the conductor the duty of accepting the passenger's explanation.

In the case of Mullins v. Illinois Cent. R. Co., 93 Miss. 184, 46 So. 529, 136 Am. St. Rep. 542, a crippled boy boarded the train at Brookhaven to go to Hazlehurst. The conductor called for his fare, and he answered that he had no ticket nor money with which to pay his fare. The conductor, ''with proper consideration for the boy,'' put him off at Wesson. It was shown that another passenger offered to pay the boy's fare, but the conductor told him that, after he had already brought the train to a stop, he could not accept this, and so put the boy off. The court held that, on failure of the boy to pay his fare and the stopping of the train, any contract or right to contract for that passage was forfeited, and that the conductor acted properly in ejecting him from the train.

It will be seen from the statement of the case at bar that, when the plaintiff was testifying on direct and cross examination, she undertook to tell the facts as they existed in her mind, and she stated that she could not find her ticket, and that she did not have a cash fare, and that, when she asked the conductor to carry her back to the station, he declined to do so. On redirect examination, a leading question was asked her suggestive of the answer that she required more time and requested more time, and, when an objection was sustained, the question was put in another form, and she stated that she did

not have time to find her ticket. She did not state how much time she used in her search for the ticket nor how much she requested to search for it, and it is clear that her answer in this regard is not consonant with her testimony already given. On direct examination, it is contradicted by her own evidence, and her testimony is impliedly contradicted by her own witness, Peyton, who said she did not look for her ticket immediately after she was ejected from the train.

To hold the railroad liable would be to impose upon it an unreasonable burden that would have the effect of nullifying the federal law. It is true that a passenger may have temporarily misplaced a ticket, but it must appear that the ticket should have been produced within a reasonable time, and a request should be made for such time, when the passenger cannot readily produce the ticket.

We think the evidence in this case is sufficient to have enabled the court below to grant the peremptory instruction requested by the railroad company, and that it should have been given.

The judgment of the court below will therefore be reversed, and the cause dismissed.

Reversed and dismissed.