68602. WESTINGHOUSE ELECTRIC CORPORATION
v. WILLIAMS et al.
(325 SE2d 460)

BENHAM, Judge.

Westinghouse Electric Corporation installed and operates the Automated Guideway Transit System ("AGTS"), also known as the "People Mover," at Atlanta's Hartsfield International Airport. Appellee Yvon Williams, an employee of an airport concessionaire, brought suit against Westinghouse, alleging that she was injured when the AGTS car in which she was riding made a sudden, unscheduled stop. Mrs. Williams based her action against appellant on theories of negligence and strict liability in tort. Her husband sought damages for loss of consortium. This appeal is an interlocutory review of the trial court's denial of summary judgment to Westinghouse.

When the evidence is construed in a light favorable to appellees, the non-movants, it shows that Mrs. Williams, a standing passenger in the AGTS car, was injured when that car stopped suddenly between Concourses A and B. Mrs. Williams did not lose her grip on the car's support pole, but experienced pain in her back and right leg.

Westinghouse employees familiar with the AGTS testified on deposition that, depending upon the distance between the AGTS car and the impediment to its progress, the system's emergency deceleration rate varied between 2.5 and 5 mph/second. The operations manager testified that a problem report is written for every "non-routine" stop the AGTS makes, and entered in the central control operator's log. The manager stated that he had reviewed the operator's log for the date and time frame in question and found "absolutely nothing."

In her deposition, Mrs. Williams testified that while she was

aware that the AGTS was subject to sudden stops, she did not know what had caused the stop which had allegedly caused her injuries. In response to an interrogatory propounded by Westinghouse, Mrs. Williams reiterated her charge that the sudden, abrupt, unscheduled stop experienced by the AGTS car was evidence of Westinghouse's negligence. She also stated that she could not identify the AGTS' defective components which had allegedly caused her injuries. In response to appellant's statement of undisputed facts, Mrs. Williams admitted that the presence of a defective component in the AGTS was unknown to her.

1. There is a general principle of negligence law that "the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence. [Cits.]" *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633 (4) (224 SE2d 739) (1976). In addition to proving the AGTS' car's stop was sudden, violent, and unusual, appellees had the burden of showing by a preponderance of the evidence that the stop was unnecessary at that time and place. *Gillem v. MARTA*, 160 Ga. App. 393 (2) (287 SE2d 264) (1981). Since appellees presented no evidence of negligence other than the occurrence of an unfortunate incident, they must, of necessity, rely on the doctrine of res ipsa loquitur, "a rule of evidence which allows an inference of negligence to arise from the happening of an event causing an injury to another . . ." *Parker v. Dailey*, 226 Ga. 643 (1) (177 SE2d 44) (1970). "The elements of the doctrine are: '(1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' [Cit.]" *Vaughn v. American Freight System*, 164 Ga. App. 786 (3) (298 SE2d 284) (1982).

Through the depositions of several of its personnel familiar with the AGTS, Westinghouse presented evidence which showed that the AGTS cars automatically stop if a power surge or outage occurs; if a passenger pulls an emergency stop release or pushes a control in a panel box within the car; if someone attempts to open a car door from within; or if someone attempts to open a platform door. The fact that the actions of someone for whom Westinghouse was not legally responsible could have been the proximate cause of the AGTS' car's abrupt stop removes the element of "exclusive physical control," thereby rendering the doctrine of res ipsa loquitur inapplicable to the case at bar. See *Dillon v. Grand Union Co.*, 167 Ga. App. 381 (2) (306 SE2d 670) (1983).

2. It would appear from Division 1 that appellees failed to do any more than allege negligence on the basis of an injury having been sustained. Westinghouse based its motion for summary judgment on its

assertion that appellees had failed to prove negligence. In response to Westinghouse's motion, appellees asserted that OCGA § 46-8-292 was applicable to the case at bar because the AGTS was a railroad. The statute provides: "In all actions against railroad companies for damages to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima-facie evidence of the lack of reasonable skill and care on the part of the servants of the companies in reference to such injury." The Code section "simply prima facie takes the place of the proof of the negligence alleged, and where the defendant introduces evidence disproving the negligence alleged the presumption vanishes, and it then becomes incumbent on the plaintiff to introduce other evidence of negligence. [Cits.]" *McVeigh v. Harrison*, 68 Ga. App. 316 (1) (22 SE2d 752) (1942). Thus, if the AGTS is a railroad, mere proof of injury from the operation of the train would be sufficient to sustain appellees' initial burden of proof. See *Fowler v. Western & Atlantic R.*, 75 Ga. App. 156 (5) (42 SE2d 499) (1947). We must, then, resolve the question of whether the AGTS is a railroad.

What constitutes a railroad has not been statutorily or judicially defined in Georgia. Other authorities are available, however: CJS describes a railroad as "a road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars, drawn by steam or other motive power, to run upon . . ." 74 CJS 311, Railroads, § 1. The Supreme Court of Maine has adopted the following definition as to what constitutes a railroad: "[A]ll roads upon which the carriages or cars have wheels adapted to run, and which in operation do run upon metallic rails." *State v. York Utilities Co.*, 45 A2d 634, 635 (Me. 1946). The AGTS is an electrically powered system of cars operating singularly or in connected groupings of two or three in a reverse turn-around loop configuration within a tunnel system linking the airport terminal and the various concourses. The cars are equipped with rubber tires which ride, not on parallel rails, but on a concrete roadway, and three guide tires are used to steer the vehicle along the guidebeam/power rail.

Among the many statutes regulating Georgia railroad companies is one which sets minimum qualifications for locomotive engineers (OCGA § 46-8-150); one which requires signal bells and whistles on locomotives (OCGA § 46-8-170); and another which requires records kept of livestock or other property injured or destroyed by operation of the railroad (OCGA § 46-8-210). The railroad company must also build and maintain cattleguards (OCGA § 46-8-129), and crossbuck signs (OCGA § 46-8-194). The Code also provides that it is within the exclusive province of the Public Service Commission to determine the reasonable rates and charges to be imposed by the railroad companies. OCGA § 46-8-20.

The AGTS has no locomotive, no driver, no signal bells or whistles, no reflectorized railroad crossbuck signs, no cattleguards and no system of reporting livestock damage. The operation of the AGTS by appellant is not regulated by the PSC, and no fares or freight rates are imposed by the operators of the AGTS. It is our conclusion that the AGTS is not a railroad and OCGA § 46-8-292 is inapplicable to the case at bar.

The history of OCGA § 46-8-292 is supportive of our conclusion. "This statute is taken in totidem verbis from the statute of Mississippi upon this subject . . . It is a well-settled general rule that when a statute has been adopted from another State, the judicial construction already placed thereon by the highest court of the jurisdiction from which it is taken accompanies it, and is treated as incorporated therein. [Cits.]" *Seaboard Air-Line R. Co. v. Fountain*, 173 Ga. 593, 599 (160 SE 789) (1931). Prior to the 1929 enactment of the statute by the Georgia General Assembly, the Supreme Court of Mississippi had construed its comparable statute narrowly: when the Mississippi legislature passed the law in 1876 and used the term "railroad companies," "they had in mind only such railroads as they were acquainted with; that is, they used the words with their ordinary meaning . . . They referred to nothing but the ordinary commercial steam railroad company . . . The authors of this statute had in mind the railroad train, made up of locomotives and cars . . . whether this section ought not to be changed so as to embrace [the AGTS], if it can constitutionally be done, is a matter for the Legislature." *Pascagoula St. R. & Power Co. v. Brondum*, 50 S 97, 98, 103 (Miss. 1909).

After this narrow construction of the statute, the Mississippi legislature enacted a much broader statute. However, the Georgia General Assembly chose to adopt the more narrowly construed version of the statute, and we acquiesce in that choice by adopting a narrower construction of the term "railroad" than appellees wish: a railroad is a road laid with parallel steel rails upon which cars, carrying passengers or freight, and equipped with wheels adapted to run upon the rails, are drawn by a locomotive. The AGTS, not satisfying this definition, is not a railroad, and OCGA § 46-8-292 is inapplicable to the case at bar. In light of the above analysis, it was error for the trial court to deny summary judgment to Westinghouse on the negligence count.

3. Mrs. Williams' remaining theory of recovery is that which is embodied in OCGA § 51-1-11 (b): strict liability. "The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its con-

dition when sold is the proximate cause of the injury sustained." OCGA § 51-1-11 (b) (1). " '[N]ot merchantable and reasonably suited to the use intended' as used in this statute means 'defective.' [Cit.] The existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product. [Cits.]" *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (2) (299 SE2d 897) (1983). While she admitted in pleadings that she was unaware of any defect in the AGTS, Mrs. Williams asserted in her brief in opposition to appellant's motion for summary judgment that the lack of seats in the AGTS car and the car's deceleration rate for emergency stops are defects in the design of the AGTS that caused her injuries.

Mrs. Williams' inability to specify in her pleadings the exact nature of the defect which she alleged caused her injuries is not fatal to her case. "[T]he existence of a manufacturing defect in a products liability case may be inferred from circumstantial evidence. [Cits.]" *Firestone Tire &c. Co. v. King*, 145 Ga. App. 840 (1) (244 SE2d 905) (1978). See also *Skil Corp. v. Lugsdin*, 168 Ga. App. 754 (309 SE2d 921) (1983).

Appellant did not submit any evidence to rebut appellees' assertion that the AGTS was defective. Compare *Rhodes v. R. G. Indus.* 173 Ga. App. 51 (325 SE2d 465) (1984); *Omark Indus. v. Alewine*, 171 Ga. App. 207 (319 SE2d 24) (1984). "Where motion for summary judgment is made by a defendant, that defendant shoulders the burden of disproving plaintiff's case, that is, the defendant must affirmatively disprove same by uncontroverted evidence that demands a finding that no genuine issue as to any material fact remains, and the defendant is entitled to a judgment as a matter of law. [Cits.]" *Lang v. Federated Dept. Stores*, 161 Ga. App. 760 (1) (287 SE2d 729) (1982).

In light of appellant's failure to carry its heavy burden of proof upon its motion for summary judgment, the trial court's denial of that motion must be affirmed insofar as the strict liability portion of appellees' complaint is concerned.

*Judgment affirmed in part and reversed in part. Pope, J., concurs. Banke, P. J., concurs in the judgment only.*

Decided December 5, 1984 —
Rehearings denied December 17 and December 19, 1984 —

*David H. Flint, Lawrence S. Burnat, Lynn C. Stewart*, for appellant.
*Milton H. Hutcheson, Jr., Ward D. Hull, W. Meade Burns, Jr.,*

*Lowell S. Fine, James A. Barnett*, for appellees.