## 73096. HEPNER v. SOUTHERN RAILWAY COMPANY.
### (356 SE2d 30)

Beasley, Judge.

Plaintiff Hepner appeals from the grant of defendant Southern Railway Company's motion for summary judgment. Hepner brought his complaint under the terms of the FELA (Federal Employers' Liability Act), 45 USCA § 51, alleging he was an employee of Southern; that while in the performance of his duties, loading frog plates on the bed of a truck, he suffered severe and debilitating pain in his back. His injuries were alleged to have resulted from Southern's negligence caused by Southern's employees, or by reason of defect or in Southern's failing to provide Hepner with reasonably safe equipment to perform the work, or by negligent failure of Southern to adequately supervise the manner and conditions of the work and labor, or by Southern's negligent failure to provide a reasonably safe place for Hepner to work. The complaint alleged Hepner suffered permanent injury to his back for which damages were sought, including pain and suffering, loss of earnings, loss of earning capacity in the future and expenses for medical treatment.

Southern answered and after discovery moved for summary judgment. The context out of which this controversy arose is hereafter summarized.

Hepner was a member of a track maintenance gang composed of a foreman and two co-workers. They drove to Culpepper, Virginia, and were instructed by the foreman to load a stack of frog plates onto the truck. The foreman then went into the office and remained absent while the three workers loaded the truck. Frog plates weigh between 30 and 40 pounds each. The workers began with the one on the top of the stack and as the truck became filled they started to lift the frog plates over their heads and throw them further up in the truck. At the bottom of the pile the frog plates were difficult to pick up and Hepner used his toe to raise one sufficiently to obtain purchase for lifting. He felt a "pulling" in his back while coming up with a frog plate — "I was lifting with my legs." He had not reached a full upright position. Although he had received no training specifically as to lifting frog plates, Hepner had been instructed as to the proper method for lifting, i.e., using his legs, and was using that method. Hepner told his co-workers that it felt like "I pulled something in my back." After loading, the team drove 15 miles to Orange, Virginia, where the frog plates were unloaded. At this time Hepner also felt pain and told his co-workers, but not his foreman, that he hurt his back. Hepner continued to work for about six weeks until in May the pain became such that he could not continue, at which point he notified the assistant track supervisor of Southern that his back was hurt but did not tell him it was a job injury.

A railroad company is not an insurer in a FELA case. *Seaboard Coast Line R. Co. v. Thomas*, 125 Ga. App. 716, 719 (188 SE2d 891) (1972). What the carrier must do is exercise reasonable care in view of the existing circumstances. *Wilkerson v. McCarthy*, 336 U. S. 53, 61 (69 SC 413, 93 LE 497) (1949). What constitutes negligence in a particular situation is determined by common law rules as interpreted by federal decisions. *Urie v. Thompson*, 337 U. S. 163, 174 (69 SC 1018, 93 LE2d 1282) (1949). The carrier is required to take precautions commensurate with danger inherent in the situation and to exercise ordinary care proportionate to the consequences that might be reasonably anticipated from neglect. *Harrison v. Mo. Pacific R. Co.*, 372 U. S. 248, 249 (83 SC 690, 9 LE2d 711) (1963); *Urie*, supra at 179. The railroad has a continuing and nondelegable duty to provide its employees with safe working conditions. *Shenker v. Baltimore &c. R. Co.*, 374 U. S. 1, 7 (83 SC 1667, 10 LE2d 709) (1963); *Southern R. Co. v. Welch*, 247 F2d 340 (6th Cir. 1957).

The railroad must take all necessary and reasonable precautions to prevent injury to its employee when put on notice of his condition. *Dennis v. Denver &c. R. Co.*, 375 U. S. 208, 209 (84 SC 291, 11 LE2d 256) (1963). Such notice may be either actual or constructive. *Shenker*, supra, 374 U. S. 1, 8; *Georgia Southern &c. R. Co. v. Meeks*, 110 Ga. App. 143, 144 (137 SE2d 919) (1964). "Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it." *Hamilton v. Edwards*, 245 Ga. 810, 811 (267 SE2d 246) (1980). See *Golden v. Nat. Life &c. Ins. Co.*, 189 Ga. 79, 86 (5 SE2d 198) (1939). A comprehensive version of the test to determine a railroad's liability is found in *Rogers v. Mo. Pacific R. Co.*, 352 U. S. 500, 506-8 (77 SC 443, 1 LE2d 493) (1957): "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.[1] Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or

---

[1] "Under the Federal Employers' Liability Act, an employee could be negligent 99.99 percent and the employer only 00.01 percent negligent and the employee would still be entitled to recover in proportion." *Atlantic Coast Line R. Co. v. Shed*, 90 Ga. App. 766, 770 (1) (84 SE2d 212) (1954). Accord *Southern R. Co. v. Cabe*, 109 Ga. App. 432, 434, 438 (2) (136 SE2d 438) (1964).

death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities . . . The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Accord *Gallick v. Baltimore & Ohio R. Co.*, 372 U. S. 108, 116 (83 SC 659, 9 LE2d 618) (1963).

Southern argues that there was no evidence that Hepner's injury resulted from its negligence. Reliance is placed upon this court's decision in *Brooks v. Southern R. Co.*, 178 Ga. App. 361, 362 (343 SE2d 143) (1986) where the majority opinion recognized that the U. S. Supreme Court has upheld liability involving lifting. See *Stone v. New York &c. R. Co.*, 344 U. S. 407, 409 (73 SC 358, 97 LE 441) (1952) which pointed out: "The likelihood of injury to men pulling or lifting beyond their capacity is obvious." Nevertheless, this court made the distinction that "[b]efore an employer may be held negligent and thus liable under the Federal Employers' Liability Act . . . it must be shown that the employer knew or had reason to know that the employee was in a position of pulling or lifting beyond his capacity."

Southern urges the following points: 1) Frog plates are relatively "light," and there is no proof that Southern knew Hepner was lifting beyond his ability. 2) The evidence did not establish that the foreman needed to be constantly supervising the work, but if his absence could be considered as negligence it was of no consequence. The record shows Hepner was lifting properly when he felt the "pull," and there was nothing the foreman, even if present, could have done. Thus, Hepner's injury did not arise from any negligence on Southern's part.

In order for Hepner to recover, the jury must be able to answer affirmatively a series of questions which may be viewed as links necessary to forge a chain of negligence. On summary judgment, Southern need sever but one link by uncontradicted proof to absolve itself from liability. While the chain may be approached from either end a natural presentation of the questions which arise may be posited as follows. Was there a duty to supervise the employee while working? If so, could proper supervision have served to prevent the injury? Or, posed another way, did the failure to supervise contribute to the events leading to the injury here? Was an improper lifting technique used? If so, was the injury, at least partially, a result of such lifting or did it occur solely from utilization of proper lifting methods?

1. Southern failed to establish that a jury would have to give a negative answer to the first question.

Hepner introduced affidavits by a former foreman of Southern and a present foreman with Seaboard. The former Southern foreman, by affidavit and amendment thereto, affirmed: that he had supervised

many crews assigned to perform heavy lifting, including frog plates; that it was Southern's policy for a foreman not to leave his crew to attempt a job unsupervised, and a foreman should always supervise laborers attempting to lift heavy objects because of the possibility of injury; that when he supervised laborers lifting heavy objects, including frog plates, he sought to insure proper manpower, lifting methods, machinery and allocation of lifting responsibility. The Seaboard foreman basically reiterated what was stated by the other foreman, relating that lifting heavy objects poses a high risk of injury to laborers; that injuries result from unsupervised lifting due to improper lifting methods, failure to allocate lifting responsibility, improper utilization of machinery, or inadequate manpower.

An affidavit may be considered even if conclusions are intermingled with facts. *Planters Rural Tel. Co-op v. Chance*, 108 Ga. App. 146, 147 (2) (132 SE2d 90) (1963); *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 440 (4) (280 SE2d 842) (1981). Furthermore, opinion evidence by the nonmoving party can be sufficient to preclude an award of summary judgment. *Scott v. Owens-Ill.*, 173 Ga. App. 19, 22 (2) (325 SE2d 402) (1984). Contrary to Southern's assertions, the affidavits are not invalid or immaterial. *Manning v. A. A. B. Corp.*, 223 Ga. 111, 116 (153 SE2d 561) (1967). See *Logan v. American Bankers &c. Co.*, 168 Ga. App. 647, 649 (310 SE2d 263) (1983). They provide a basis for a jury to consider whether the failure to properly supervise the loading process was negligent.

2. The next problem centers on what proper supervision might have accomplished. Hepner stated that towards the end of the loading process he and his co-workers were lifting frog plates above their heads. A jury would be authorized to find that lifting thirty to forty-pound frog plates above the head and throwing them on the truck was not a proper method of lifting. Was the railroad by any manner or means in complicity with this procedure? A present, supervising foreman might have ascertained the danger of lifting above one's head and designated suitable alternate means of accomplishing the loading.

In his absence, may the railroad absolve itself of any knowledge? No, for knowledge may be either actual or constructive. The affidavits state that Southern's foreman had a duty to supervise. If that duty had been fulfilled, the foreman would have been apprised of the means used to load the truck. Having such duty, there is no escape from the information available had the duty been met. Thus a jury could find the failure to supervise resulted in improper lifting procedures which might have been forestalled by proper supervision and instruction.

3. Crucial to a determination of whether the summary judgment was properly granted is Southern's contention that the evidence established Hepner was injured while lifting the frog plate properly and

thus there could be no negligence on its part. It is true that Hepner testified that he felt a "pulling" while not totally erect and lifting with his legs. However, on summary judgment with the burden on defendant to establish the absence of a material fact, this does not pinpoint the injury as arising solely from proper lifting methods. Back injuries do not always occur spontaneously but may arise from continued abuse, culminating in pain and disability. The actual injury could have arisen from those acts which constitute improper lifting with only the results manifesting themselves during a time of proper lifting. A jury should determine when, and as a result of what actions, the injury occurred. *Bailey v. Central Vt. R.*, 319 U. S. 350, 353 (63 SC 1062, 87 LE 1444) (1943).

While Southern's showing may have dented the links, the chain remains intact. For on none of those points does the evidence of record demand a finding for Southern. It was therefore error to grant its motion for summary judgment.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

ON MOTION FOR REHEARING.

Southern raises *Celotex Corp. v. Catrett*, 477 U. S. ___ (106 SC 2548, 91 LE2d 265) (1986), as requiring a different result and argues that we must adopt the reasoning of the highest court of our land. *Catrett*, interpreting Rule 56 of the Federal Rules of Civil Procedure, holds that where the nonmoving party has the trial burden of proof, the party moving for summary judgment discharges its burden of initially showing the absence of any genuine issue of material fact by pointing out the absence of evidence to support the nonmoving party's case. Thus, the movant need not support its motion with proof tending to negate the existence of the other party's claim.

This is contrary to the Georgia cases which have construed what is now OCGA § 9-11-56 since its inception. Nevertheless, it is urged that we are compelled, or should be persuaded, to adopt the different theory of *Catrett*. This argument in part ignores the fundamental principles of federalism. The United States Supreme Court passed only upon Federal Rule 56. Even if OCGA § 9-11-56 contained identical language, which it does not, we are not required to construe it in like manner. We would be bound only if it found our rule constitutionally deficient. Absent such restraint, we are free to construe our statutory language as the General Assembly intended, keeping in mind the historical perspective of our laws.

We are not compelled and are not persuaded to change our traditional approach to summary judgment. This resolution is fortified by language in our rule not found in its federal counterpart. After reciting that judgment should be rendered if there is no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law, this precautionary admonition follows: "but nothing in this Code section shall be construed as denying to any party the right to trial by jury where there are substantial issues of fact to be determined." OCGA § 9-11-56 (c). Until the Georgia Supreme Court holds otherwise, the best way to preserve a party's fundamental right to a jury trial is to require the moving party to negate by proof an essential element of the nonmoving party's claim. See, e.g., *Henderson v. Atlanta Transit System*, 133 Ga. App. 354 (210 SE2d 845) (1974); *Westinghouse Elec. Co. v. Williams*, 173 Ga. App. 118, 122 (325 SE2d 460) (1984).

In a final effort, Southern contends that because this is a FELA case we must apply federal interpretation and thus *Catrett*. Southern espouses the well-established maxim that all matters of substantive law are controlled by the FELA as construed by the federal cases. It then relies upon cases holding that in actions brought under federal statutes the federal courts, and not state courts, establish the burden of proof. See *Central Vermont R. Co. v. White*, 238 U. S. 507 (35 SC 865, 59 LE 433) (1914). See also *Garrett v. Moore-McCormack Co.*, 317 U. S. 239 (63 SC 246, 87 LE 239) (1942).

The cases cited by Southern treat the burden of proof on trial, but more precisely they deal with instances where a state court's burden of proof or rule of evidence or practice tends to emasculate or limit the pervasive, beneficent effect of the FELA.

In *Brown v. Western R. of Ala.*, 338 U. S. 294 (70 SC 105, 94 LE 100) (1949), the Supreme Court considered this court's ruling which affirmed the trial court's sustaining a demurrer in a FELA case and dismissing the claim. *Brown v. Western R. of Ala.*, 77 Ga. App. 780 (49 SE2d 833) (1948). The Supreme Court prefaced its holding by observing that it had a duty to ascertain "whether petitioner has been denied a right of trial granted him by Congress." Regardless of the state's rules of practice and procedure, the "federal right cannot be defeated by the forms of local practice." Id. at 296.

The policy reasons for federal supremacy were then set forth. "Strict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws . . ." Thus, "the assertion of federal rights when plainly and reasonably made, is not to be defeated under the name of local practice." Id. at 298-299. The Supreme Court then acknowledged that if it failed "to protect federally created rights from dismissal because of over-exacting local requirements for meticulous pleadings, desirable uniformity in adjudication of federally created rights could not be achieved." Id. at 299.

The rationale focuses on state procedure which restricts a claimant's rights under the FELA. The prohibition is as to the limitation

or elimination of federally created rights. *Dice v. Akron, Canton &c. R. Co.*, 342 U. S. 359, 361-2 (72 SC 312, 96 LE 398) (1951).

The converse is not true. A state procedure need not be as restrictive as the federal. An excellent exposition of this concept is found in *New Jersey v. Portash*, 440 U. S. 450, 454 (99 SC 1292, 59 LE2d 501) (1979), which recognized that the Supreme Court could review a federal question raised according to state procedures that would be considered inadequate to preserve the question under federal practice. See *Lefkowitz v. Newsome*, 420 U. S. 283, 288 (95 SC 886, 43 LE2d 196) (1975).

In sum, permitting a FELA claimant to reach a jury trial under our summary judgment rules does no violence to the principle that federal cases interpreting the substantive law control.

*Motion for Rehearing en banc denied.*

DECIDED FEBRUARY 20, 1987 —
REHEARING DENIED MARCH 30, 1987 — 

*William R. Moseley, Jr., Donald F. Ruzicka*, for appellant.
*Edgar A. Neely, Jr., Eric J. Spitler*, for appellee.