73659. NOWLIN v. PARKER.
(358 SE2d 258)

McMURRAY, Presiding Judge.

On December 7, 1984, Mozelle C. Nowlin (decedent) executed her "Last Will and Testament" naming as primary beneficiaries her children, Bryan Tillman Nowlin, Jr. (Nowlin) and Bobbie June Parker (Parker). Other than specific bequests, decedent provided that her property was to be divided equally between Nowlin and Parker.

On December 13, 1984, decedent died and on December 17, 1984, her "Last Will and Testament" was filed in the Probate Court of Cobb County, Georgia. Simultaneously, "Letters Testamentary" issued to Parker as executrix of decedent's estate. On January 17, 1985, Nowlin filed a petition seeking removal of Parker as executrix of de-

cedent's estate. In his petition, Nowlin alleged that Parker misappropriated estate assets by converting funds derived from certain savings certificates, formerly owned by decedent, to her own use. In an order filed February 6, 1985, the Judge of the Probate Court of Cobb County found that Parker had not misappropriated estate funds because the savings certificates at issue were held in joint capacity by decedent and Parker and as such remained with Parker as the surviving party. Nowlin appealed to the Superior Court of Cobb County, Georgia for de novo review.

On November 11, 1985, Parker filed a motion for summary judgment and a supporting affidavit which showed that Parker and decedent jointly owned a passbook savings account and three certificates of deposit with Lockheed-Georgia Employee's Federal Credit Union. (The first savings certificate was issued on July 7, 1983, in the principal amount of $20,000; the second savings certificate was issued on January 5, 1984, in the principal amount of $10,000; and, the third savings certificate was issued on July 25, 1984, in the principal amount of $16,000.) From this evidence, Parker argued that she is entitled to the proceeds of the joint accounts, citing OCGA §§ 7-1-810 (4) and 7-1-813 (a).

OCGA § 7-1-810 (4) defines a joint account as "an account payable on request to one or more of two or more parties, whether or not mention is made of any right of survivorship." OCGA § 7-1-813 (a) provides, in pertinent part, that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created."

The affidavit submitted in support of Parker's motion for summary judgment was that of R. W. Hampton, the "Assistant Manager" of the Lockheed-Georgia Employee's Federal Credit Union. Corroborating the presumption created by the above Code sections, Mr. Hampton referred to each of the certificates of deposit in his affidavit, and deposed that "[a]t the time said joint [accounts were] created by [decedent], there was no evidence manifested by her of an intention to have said [accounts] belong to her estate as opposed to the surviving joint owner, Bobbie June Parker." Referring to the joint passbook savings account, Mr. Hampton deposed that the "membership agreement" of the savings account "provides that in the case of the death of one of the joint owners, that the survivor shall be entitled to all rights of ownership as to said passbook account."

In opposition, Nowlin submitted the deposition of Odell Allen, the decedent's sister, who testified that she had related to decedent that she (Odell Allen) had her own daughter's name put on her certificates of deposit in case something happened to her (Odell Allen). In

this regard, Allen testified that decedent "had [Parker's name] put on her certificates . . . [s]trictly for convenience in case something happened. It was not [decedent's] intent that those certificates and her money go to [Parker]." Upon cross-examination, Allen testified that neither she nor decedent was aware that the survivor of a joint account would become the owner of the account.

From this evidence, the trial court entered an order excluding the testimony of Allen as inadmissible hearsay and concluded "that the sums remaining on deposit with the Lockheed-Georgia Federal Employee's Credit Union were held in a joint account and as such belong to the surviving party, Bobbie June Parker, as against the estate of the Deceased, Mozelle C. Nowlin." The trial court further held that Parker "has not violated her oath of office and should not be removed as the executrix of the estate." Nowlin appeals. *Held*:

Nowlin contends the trial court erred in excluding the testimony of Odell Allen as inadmissible hearsay. From this contention, Nowlin argues the trial court erred in granting summary judgment in favor of Parker because Allen's testimony was sufficient to raise an issue of fact concerning decedent's intent in creating joint ownership in the certificates of deposit with Parker.

Assuming, without deciding, that Allen's testimony was admissible in opposition to Parker's motion for summary judgment, we find insufficient evidence in Allen's deposition to rebut the statutory presumption of survivorship as an incident to the creation of the joint assets. As stated above, OCGA § 7-1-813 (a) requires "clear and convincing evidence of a different intention at the time the account is created" to rebut the presumption that "a joint account [shall] belong to the surviving party . . . as against the estate of [the non-surviving party]." Although Allen testified that she advised decedent to create joint accounts with someone, she did not testify that decedent told her that she intended to create an interest with Parker in the certificates of deposit other than that prescribed by OCGA § 7-1-813 (a). On the contrary, at the time the joint certificates of deposit were created Allen testified that she did not witness decedent manifest an intent contrary to the creation of joint assets. Allen's conclusion that decedent did not intend to create joint assets "with rights of survivorship" in the certificates of deposit was not based on what decedent told her, it was based on Allen's erroneous conclusion as to the effect of the creation of joint assets. Further, the statutory presumption is supported by the fact that decedent's will, which she executed after the creation of the joint assets, makes no reference to the disposition of the savings certificates. Consequently, finding no "clear and convincing evidence" to contradict the statutory presumption, we find the trial court properly entered summary judgment in favor of Parker. See *Lastinger v. Johnson*, 148 Ga. App. 453, 454 (3, 4) (251

SE2d 369); *White v. Royal*, 150 Ga. App. 57 (256 SE2d 662); and *Collins v. Collins*, 176 Ga. App. 79 (335 SE2d 307).

*Judgment affirmed. Birdsong, C. J., Banke, P. J., Carley, Sognier and Benham, JJ., concur. Deen, P. J., Pope and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

There are questions for the jury to resolve, created by the testimony of Mozelle's sister Odell taken in deposition, which the superior court erroneously refused to consider on the ground the pertinent statements were inadmissible hearsay. The court applied correct principles regarding summary judgment but incorrect rules of evidence in relation thereto, and it also construed the "time" language of OCGA § 7-1-813 (a) too narrowly. The effect of these errors undermines the validity of the summary judgment.

OCGA § 7-1-813 creates a right of survivorship in a joint account, thereby giving certain legal results to a contractual arrangement between a depositor and a financial institution. One is that it constitutes part of the statutory scheme to provide a shield for the bank, which is protected from liability if it pays the total proceeds to the survivor. OCGA §§ 7-1-816; 7-1-817. Agnor discusses this aspect as one of the two, in "Joint Bank Accounts: A Different Form of Joint Tenancy," 17 Ga. St. B. J. 184 (1981). We are not here concerned with that relationship between the creator and the depository.

The other result of OCGA § 7-1-813 controls the interests of the parties to the account, leaving ownership open to resort to an evidentiary procedure rather than automatically creating a right of survivorship as a matter of law. That is to say, the right of survivorship is not conclusive but is only presumptive. As specified in the statute and recognized in *Collins v. Collins*, 176 Ga. App. 79 (335 SE2d 307) (1985), the presumption may be overcome by "clear and convincing evidence of a different intention at the time the account is created." That evidence could be expressly included in the terms of the contract, of course, but as shown here and testified to by the depository's employee, Mozelle did not manifest such intention when the actual transaction was negotiated. See in this connection OCGA § 7-1-813 (e).

Since it is only a presumptive right, that does not end this matter. And so the court below did go farther, but within narrowly drawn constraints which proved fatal to its legal conclusion.

One of the reasons the superior court refused to consider Odell's testimony was that it did not relate to intention expressed when she accompanied Mozelle to the credit union and that she was not in fact present on other occasions at the credit union. From a reading of the superior court order, it considered "at the time" to refer only to that

narrowly subscribed event transpiring at the credit union office, whereas I believe it is more properly construed to include the circumstances surrounding the transaction as well.

The objective is to ascertain and enforce the intention of the depositor. Where that intention is conveyed not to the depository's employee, who is a stranger, but rather to a more likely confidant somewhat contemporaneously with the actual transaction, it is evidenced within the scope "at the time."

Surrounding circumstances will often shed light on the real significance and meaning of isolated events. Intentions are traditionally recognized as provable by consideration of the person's words, conduct, demeanor, motive and all other circumstances connected with the act focused on. See, e.g., OCGA § 16-2-6 which, while governing criminal trials, states a principle of general law.

Moreover, the cases construing this Multiple-Party Accounts Act demonstrate that evidence of circumstances surrounding the actual formal transaction are relevant to the ascertainment of the creator's intent. See, e.g., *Collins*, supra; *Lastinger v. Johnson*, 148 Ga. App. 453 (251 SE2d 369) (1978).

The other reason the court excluded Odell's testimony was that since the employee was also present when Odell was, her testimony did not meet the no-other-person requirement of *Chrysler Motors Corp. v. Davis*, 226 Ga. 221 (173 SE2d 691) (1970) for permitting a decedent's hearsay.

However, Odell testified at length concerning the reason Mozelle made the accounts joint, it being for convenience, as the two of them had discussed on several occasions before it was done. There was no evidence whatsoever that anyone else was present during these conversations.

The superior court was satisfied that the trustworthiness requirement of *Chrysler* was met, as Odell had no interest in the money.

Another impediment in the exclusion of the evidence is that a significant amount of Odell's testimony regarding intent is not hearsay in the first place. She stated that she was very close to her sister and had been with her a good bit of the time since Mozelle's husband contracted cancer and died in 1981 and right up until Mozelle's own death in 1984. According to Odell, she assisted Mozelle with her financial affairs and advised her to add her daughter Bobbie's name to the accounts because the two sisters traveled a lot together and something might happen that would necessitate the money's withdrawal, and also, that if joint, Bobbie could get the money quickly after Mozelle's death and share it equally with her brother without having the delay of probate. Odell knew intimately the relationship which Mozelle had with each of her children and what she did with respect to her will.

Thus, what Odell told Mozelle, what understanding Odell had and passed on to Mozelle of what the legal and anticipated consequences of this arrangement would be, and what Mozelle did as a result, would not be hearsay and would be relevant to the question of Mozelle's intention. What Odell did not realize, and did not tell Mozelle, was that there was a possibility that Bobbie would not be compelled to share the proceeds of the accounts equally with her brother if she did not voluntarily honor her mother's desire as expressed both within and outside the will, because Bobbie would have legal title. This evidence is not hearsay.

Even the hearsay, that is, Mozelle's statements regarding her intention that the two children share equally in the money, would be admissible under the *Chrysler* rule. The two prerequisites for the exception to the hearsay rule as it applies to a deceased's statements, i.e., necessity and a circumstantial guaranty of trustworthiness, are satisfied here and would thus the statements be admissible before a jury.

That being the case, the superior court erred in excluding it from consideration. When added to the total picture, it is entitled also to all reasonable inferences which may be drawn from it, in favor of the non-moving party. *Davis v. Dickson*, 232 Ga. 338, 339 (206 SE2d 473) (1974). All the evidence must be construed most strongly against the movant. *Ga. Health Care v. Loeb*, 151 Ga. App. 350 (1) (259 SE2d 734) (1979). It is not surprising that a clear, written manifestation of intent was not expressed, or that there was some misunderstanding of consequences. The law in Georgia on the subject of multiple party accounts has itself been unsettled and unclear, see Link, "Probate and Administration of Small Estates in Georgia: Some Proposals for Reform," 6 Ga. L. Rev. 74, 80 (1971), and the statute now at issue had been passed just in 1976. It was in this total milieu that Mozelle acted.

This court concludes that there is not "clear and convincing evidence" that Bobbie was not to have the total beneficial interest, but that is first up to the jury, which will see and hear and observe the witnesses. Defendant has not established that she is entitled to prevail as a matter of law under OCGA § 9-11-56 (c), as there is a genuine issue of material fact made by plaintiff's competent evidence and the rules governing it, which favor the respondent, whose right to a trial is at stake.

I would reverse.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.

Decided May 11, 1987 —
Rehearing denied June 1, 1987 — 

*Gary Walker, David N. Soloway*, for appellant.
*Robert E. Flournoy II*, for appellee.