## A96A2288. WILLIG v. SHELNUTT.
(480 SE2d 924)

JOHNSON, Judge.

Sheryl Willig, as administratrix of the estate of her grandmother, Estelle Jolly, sued Sandra Shelnutt, Willig's sister, claiming that when Jolly died, Shelnutt improperly converted to her own use funds from two joint bank accounts bearing Shelnutt's and Jolly's names. Shelnutt moved for summary judgment, relying on OCGA § 7-1-813 (a), which provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." The trial court granted Shelnutt's motion for summary judgment, and Willig appeals.

1. Willig contends the trial court erred in granting summary judgment for Shelnutt when there was evidence that the joint accounts at issue were created solely for Jolly's convenience and that Jolly did not intend Shelnutt to receive the funds remaining in the accounts upon her death. See *James v. Elder*, 186 Ga. App. 810, 811 (368 SE2d 570) (1988).

At issue are two joint accounts: a certificate of deposit dated April 8, 1991, which replaced a joint certificate of deposit dated August 15, 1990, and a joint checking account modified October 21, 1991. Each account bears the names of both Jolly and Shelnutt. In her last will, executed in November 1992, Jolly made no mention of the accounts, but provided that after her debts were paid, the remainder of her estate would be divided equally between James Jolly, Sr., Susan Butker, Willig and Shelnutt.

In support of her motion for summary judgment, Shelnutt submitted an affidavit from LeDoris Chandler, custodian of records at SouthTrust Bank of Georgia. After laying a business records foundation, Chandler testified that she was familiar with the certificate of deposit established in April 1991 in the names of "Mrs. Frank L. Jolly [Estelle] or Sandra Shelnutt." Chandler stated that Jolly and Shelnutt executed a contract on the account, the terms of which provide that Jolly and Shelnutt are joint tenants with the right of survivorship and that any funds placed in the account are conclusively intended to be a gift to the other signatory party. Copies of the contract are attached to the affidavit as exhibits. Chandler added that the bank's records do not reveal any manifestation by Jolly of any intention or desire that the account belong to her estate rather than the surviving depositor, and had Jolly manifested any such intention, in the bank's ordinary course of business, Jolly would have been required to execute a contract for an individual account instead.

In addition, Shelnutt submitted the affidavit of Melma Reid, cus-

todian of records for Wachovia Bank, who also laid a business records foundation for documents pertaining to the joint checking account which Jolly modified in October 1991 to add Shelnutt's name. The agreement was expressly made subject to "Terms and Conditions Governing [the] Account." The "Terms" document includes the provision that sums on deposit at the death of a depositor to a joint account belong to the surviving depositor to the exclusion of the estate. Reid added that the records do not indicate a manifestation by Jolly of any intention that the account belongs to her estate rather than Shelnutt. Copies of the terms and signature card are attached to the affidavit.

Shelnutt also submitted the deposition of Jolly's private-duty nurse and personal assistant, Theresa Halsell. Halsell testified that in 1989 or 1990 Jolly made arrangements to put Shelnutt "on her account," and that Jolly told her she wanted Shelnutt "to have what she had," that she "raised her from a little girl," and that Shelnutt always called her regardless of how Jolly treated her. Halsell testified further that in 1990 she was present when Jolly told her attorney that she intended for Shelnutt to have everything she had. Halsell stated that Jolly asked the lawyer what would happen if Shelnutt was on her savings and checking accounts when she died. The attorney responded that the money would go to the person whose name was on the account at the time the other person died.

In opposition to Shelnutt's motion, Willig submitted an affidavit from Susan Butker, another of Jolly's granddaughters, who testified that Butker's name was also on some of Jolly's bank accounts in "the early 1980s" but it was only to assist Jolly with her finances. Butker stated that other family members' names were also on the accounts "during the last thirteen years" of Jolly's life, but Jolly "made it clear that the money in her bank accounts . . . belonged to her, and to no one else," and removed relatives' names from the accounts when she became angry with them. Butker added that just after Jolly died in 1993, Shelnutt expressed uncertainty as to whether she was authorized to spend the money in the joint accounts. None of Butker's statements specifically refers to Jolly's intentions at the time the joint accounts bearing Shelnutt's name were established.

Willig also submitted an affidavit from Jolly's son, James Jolly, Sr. James Jolly testified that Estelle Jolly put his name on her bank accounts in the late 1980s so he could help manage her financial affairs and then removed his name when she was mad at him. Without specifying any time frame, he stated generally that Estelle Jolly "made it clear" to him that although she put family members on the accounts, the money belonged to her and no one else. James Jolly also stated that in *1993* Estelle Jolly told him she wished the accounts would pay more interest "for us," and that everything she owned was

going to him, Willig, Butker and Shelnutt. James Jolly made no statements specifically addressing Estelle Jolly's intentions in 1990 or 1991 when she placed Shelnutt's name on the accounts at issue.

"OCGA § 7-1-813 (a) requires *clear and convincing evidence of a different intention at the time the account is created* to rebut the presumption that a joint account shall belong to the surviving party as against the estate of the non-surviving party." (Punctuation omitted; emphasis supplied.) *Nowlin v. Parker*, 183 Ga. App. 137, 139 (358 SE2d 258) (1987). Even if we assume arguendo that all of the foregoing testimony is admissible, the evidence is insufficient to rebut the statutory presumption of survivorship as an incident to the creation of the joint assets. None of the affiants provides any evidence that Jolly told them *at the time these joint accounts were created* she did not intend for the deposits to belong to Shelnutt upon her death. In fact, the only evidence pertaining directly to Jolly's intentions *at the time these accounts were created* indicates that Jolly did intend for Shelnutt to receive the account proceeds when she died. Jolly signed contracts with the bank in which she agreed that the funds would belong to Shelnutt upon her death, told her nurse that she wanted Shelnutt "to have what she had," and, after being advised by her attorney that the joint funds would belong to Shelnutt, did not undertake to effect any changes in the accounts.

"[OCGA § 9-11-56] places the burden on the moving party to show that no material issues of fact exist. The burden of proof can be shifted, however, when a prima facie showing is made that the moving party is entitled to judgment as a matter of law. The opposite party must come forward with rebuttal evidence at that time, or suffer judgment against him." (Emphasis omitted.) *Meade v. Heimanson*, 239 Ga. 177, 180 (236 SE2d 357) (1977). The non-movant must set forth specific facts and present his case in full in order to show there is a genuine issue for trial. *Wheat v. First Union Nat. Bank*, 196 Ga. App. 26, 27 (2) (395 SE2d 351) (1990). Shelnutt satisfied her burden by presenting bank records and testimony which created a statutory presumption that the funds belong to her as the surviving party to a joint account. Willig, however, failed to rebut the statutory presumption by presenting specific evidence of a different intention at the time the joint accounts were created. See *Nowlin*, supra.

Whether the evidence is sufficient to establish a different intention with regard to a joint account is, ordinarily, to be decided by the trier of fact. See *Godwin v. Johnson*, 197 Ga. App. 829, 831 (1) (399 SE2d 581) (1990). In the present case, however, there is no evidence, either "clear and convincing" or otherwise, which would authorize a finding that Jolly did not intend for Shelnutt to have a right of survivorship in the accounts at the time they were created. See *Trust Co. Bank v. Thornton*, 204 Ga. App. 903, 904-905 (1) (420 SE2d 817)

(1992). The trial court properly entered summary judgment in favor of Shelnutt. See *Nowlin,* supra at 139.

2. There is no merit to Willig's argument that the trial court erred in not considering James Jolly's and Butker's affidavits. The trial court did not state that it did not consider the affidavits and in fact specifically relied on the contents of the affidavits in rendering its decision.

3. Willig argues that the trial court erred in considering Chandler's and Reid's affidavits when they contain opinions which are conclusory in nature. In our view, the affidavits complained of do not set forth any opinions, only facts. In any event, affidavits may be considered even if conclusions are intermingled with facts. *Hepner v. Southern R. Co.,* 182 Ga. App. 346, 349 (1) (356 SE2d 30) (1987). We find no error.

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 7, 1997.

*Charles A. Mullinax, James E. Howard,* for appellant.
*John L. Skelton, Jr.,* for appellee.